# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### WEST PALM BEACH DIVISION

| | |
|---|---|
| W. A. SOKOLOWSKI, Individually and Derivatively on Behalf of **OCWEN FINANCIAL CORPORATION,** | Civil No.   9:14-cv-81601-WPD |
| Plaintiff, | |
| v. | |
| **WILLIAM C. ERBEY, RONALD M. FARIS, RONALD J. KORN, WILLIAM H. LACY, BARRY N. WISH, ROBERT A. SALCETTI, WILBUR R. ROSS, JOHN V. BRITTI, ALTISOURCE PORTFOLIO SOLUTIONS, S.A., ALTISOURCE RESIDENTIAL CORPORATION, ALTISOURCE ASSET MANAGEMENT CORPORATION and HOME LOAN SERVICING SOLUTIONS,** | |
| Defendants, | |
| - and - | |
| **OCWEN FINANCIAL CORPORATION**, a Florida Corporation, | |
| Nominal Defendant. | |

---

## MOTION TO STAY ACTION BY NOMINAL DEFENDANT OCWEN FINANCIAL CORPORATION AND DEFENDANTS WILLIAM C. ERBEY AND RONALD M. FARIS AND INCORPORATED MEMORANDUM OF LAW

**GREENBERG TRAURIG, P.A.**

Jeffrey Allan Hirsch, Esq.
401 East Las Olas Boulevard, Suite 2000
Fort Lauderdale, Florida  33301
Telephone:  (954) 765-0500
Facsimile:  (954) 765-1477
Florida Bar No. 199850
Email: hirschj@GTLAW.com

**KRAMER LEVIN NAFTALIS & FRANKEL LLP**

John P. Coffey, Esq.
Jonathan M. Wagner, Esq.
Jason M. Moff, Esq.
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000
Email: scoffey@kramerlevin.com

*Counsel for All Defendants*

Table of Contents

|   | | Page |
|---|---|---|

MEMORANDUM OF LAW ............................................................................................. 1

I. PRELIMINARY STATEMENT ................................................................................. 1

II. BACKGROUND ......................................................................................................... 2

    A.    Mr. Sokolowski Submits To Ocwen A Pre-Suit Demand And The Special Litigation Committee Is Formed ................................................................. 2

    B.    Pending Actions Concerning Alleged Ocwen Misconduct ........................ 4

        1.    Mr. Sokolowski's Shareholder Derivative Action ......................... 4

        2.    Putative Class Action By Ocwen Shareholders ............................. 5

        3.    Putative Class Action By Altisource Shareholders ........................ 6

        4.    Additional Matters ......................................................................... 6

    C.    The Special Litigation Committee Appoints Two New Members ............. 7

    D.    On Account Of The Pendency Of Other Matters, The Special Litigation Committee Decides To Defer Determining Whether To Pursue The Pending Derivative Claims ......................................................................... 8

III. ARGUMENT ............................................................................................................. 9

    A.    This Action Should Be Stayed Because Ocwen Faces Other Matters Concerning Substantially Similar Allegations ............................................ 9

        1.    Moving Forward With This Litigation Could Substantially Harm Ocwen ............................................................................. 10

        2.    Proceeding With This Litigation Would Be Premature And Thus Judicially Inefficient ........................................................... 13

        3.    Plaintiff Will Suffer Little If Any Prejudice If A Stay Is Granted ........... 14

    B.    A Stay Of This Action Would Be Consistent With The Business Judgment Of Ocwen's Special Litigation Committee ............................................... 15

        1.    Florida Corporate Law Contemplates Judicial Deference To Special Litigation Committees ...................................................... 15

   2. The Special Litigation Committee's Determination Is Reasonable
    And Made In Good Faith By Independent Directors ................................. 18

  C. Mr. Sokolowski's Section 14(a) Claim Should Not Proceed At This Time ......... 18

IV. CONCLUSION .................................................................................................................... 20

Nominal defendant Ocwen Financial Corporation ("Ocwen" or the "Company") and defendants William C. Erbey and Ronald M. Faris hereby move to stay this action, pursuant to this Court's inherent power to enter stays, with such stay to apply to any and all future pleadings and motions pending the disposition of other litigation matters pending against or involving Ocwen ("Other Matters"). The requested stay should be issued because: (i) Ocwen would face substantial and undue prejudice absent a stay; and (ii) a stay would properly defer to the independent judgment of Ocwen's Special Litigation Committee. Ocwen and Messrs. Erbey and Faris respectfully submit the incorporated memorandum of law below, setting forth in more detail these grounds in support of their motion to stay.

## MEMORANDUM OF LAW

### I. PRELIMINARY STATEMENT

This is a derivative action purportedly brought on behalf of Ocwen, alleging misconduct and breach of fiduciary duty by members of the Ocwen Board of Directors. Ocwen is at the same time facing other litigation matters that present the same issues as those raised here. These Other Matters include two consolidated putative securities fraud class actions, as well as an SEC investigation and litigation brought or threatened by residential mortgage backed securities ("RMBS") noteholders. When, as here, parallel securities and derivative actions are pending, the standard practice is for courts to stay the derivative action pending disposition of the parallel actions. *See Miccosukee Tribe of Indians of Fla. v. S. Fla. Water Mgmt. Dist.*, 559 F.3d 1191, 1198 (11th Cir. 2009) (affirming district court's decision to stay pending appeal in another case that was "likely to have a substantial or controlling effect on the claims and issues in the stayed case"). The considerations animating that practice apply with particular force here.

*First*, proceeding with this action could significantly damage Ocwen in the Other Matters. Ocwen could be forced to take positions here that harm its defenses elsewhere, and a judgment against one or more defendants could be dispositive and severely prejudicial to Ocwen.

*Second*, liability and damages in this case likely hinge on the outcome of at least some of the Other Matters, including the pending securities class actions. To pursue this litigation now would thus be premature and judicially inefficient.

*Third*, plaintiff will suffer no prejudice if a stay is granted. A stay will preserve the status quo, permit the action to remain in place, and avoid harming Ocwen.

*Fourth*, staying this litigation is consistent with the independent judgment of Ocwen's Special Litigation Committee. That committee—authorized to address the allegations in Mr. Sokolowski's amended complaint and in pre-suit demands by other purported shareholders—concluded that in light of prudential considerations, deferring this action is appropriate pending a material change in the status of the Other Matters. Governing Florida law precludes shareholders from usurping a corporation's judgment so long as the corporation's determinations are based on reasonable, good faith, independent analyses. Those criteria are met here: (i) the Special Litigation Committee's decision-making process was sound; (ii) the rationale for its decision comports with well-settled case law; and (iii) the members of the Committee are independent.

Plaintiff has tacked on a claim under Section 14(a) of the Securities Exchange Act of 1934 ("Exchange Act"), which he purports to have brought "directly." This Court should follow others that have rejected efforts by shareholder plaintiffs to use a Section 14(a) claim to circumvent a derivative suit stay, especially since at base this claim is derivative, and not direct.

## II. BACKGROUND

The facts set forth below are based on the Declaration of John P. Coffey ("Coffey Decl."), counsel to Ocwen and Messrs. Erbey and Faris, and the exhibits attached thereto; the Declaration of Charles M. Rosenberg ("Rosenberg Decl."), counsel to the Special Litigation Committee, and the exhibits attached thereto; and the allegations of the Complaint, accepted as true solely for the purposes of the motion.[1]

### A. Mr. Sokolowski Submits To Ocwen A Pre-Suit Demand And The Special Litigation Committee Is Formed

Ocwen is a Florida corporation operating as a mortgage servicer and originator. (¶70). Mr. Faris is Ocwen's Chief Executive Officer and has served on the Board of Directors since 2003. (¶35). Mr. Erbey served as Ocwen's Executive Chairman from 1996 to January 2015. (¶32). Defendants Robert A. Salcetti, Barry N. Wish, William H. Lacy, Ronald J. Korn, and Wilbur R. Ross (together, the "Defendant Outside Directors") are current or former independent Ocwen directors who served during the period relevant to the Complaint. (¶¶36-

---

[1] Exhibits to the Coffey Declaration are referenced as "Coffey Ex.__". Exhibits to the Rosenberg Declaration are referenced as "Rosenberg Ex. __." Paragraphs to the Complaint are referenced as "¶__."

41). Mr. Sokolowski has also named as defendants John V. Britti, who served as Ocwen's Chief Financial Officer during the relevant period (¶42), as well as companies Altisource Portfolio Solutions, S.A. ("Altisource"), Altisource Residential Corporation ("RESI"), Altisource Asset Management Corporation ("AAMC"), and Home Loan Servicing Solutions ("HLSS") (¶¶51-69).

On February 11, 2014, Mr. William A. Sokolowski sent a pre-suit demand letter (the "Sokolowski Demand") to the Board, demanding that Ocwen bring suit against Messrs. Erbey and Faris, and Defendant Outside Directors. (Coffey Ex. 1). The letter asserted that the directors had "mismanage[d]" Ocwen's operations and "cover[ed] up" Ocwen's "lack of adequate controls." (*Id.*, at 1).

On February 28, 2014, Ocwen, through its counsel, informed Mr. Sokolowski's counsel that a copy of the Sokolowski Demand had been provided to the Board and that the Board intended to undertake steps it deemed appropriate after assessing his allegations. (Coffey Decl. ¶3). On May 9, 2014, Ocwen's counsel informed Mr. Sokolowski's counsel that the Company had commenced an investigation into his allegations. (*Id.* ¶4).

On May 14, 2014, the Board passed a resolution authorizing the formal creation of a Special Litigation Committee to investigate the allegations raised in the Sokolowski Demand and demand letters received from two other shareholders. (Rosenberg Decl. ¶3 & Coffey Ex. 2, at 9-10). By that resolution, the Board also appointed one of its independent directors (and chair of its Audit Committee), Mr. Korn, to identify counsel who would advise the independent directors in connection with the formation of and subsequent investigation by the Committee. (Rosenberg Decl. ¶3 & Coffey Ex. 2, at 10). Messrs. Erbey and Faris recused themselves from the discussion and vote concerning the resolution. (Rosenberg Decl. ¶3 & Coffey Ex. 2, at 10).

Upon Mr. Korn's recommendation, the Board retained Charles Rosenberg and Samuel Salario of Carlton Fields Jorden Burt ("Carlton Fields") as counsel in connection with the anticipated formation of a Special Litigation Committee. (Rosenberg Decl. ¶4). On June 13, 2014, Ocwen through its outside counsel advised Mr. Sokolowski's counsel that the Board had retained independent counsel to advise the Board on the formation and membership of the Committee, and to advise the Committee with respect to its investigation and ultimately its response to the allegations in the Sokolowski Demand. (Coffey Decl. ¶6).

Having retained Carlton Fields, and again with Messrs. Erbey and Faris recusing themselves, the Board passed another resolution on August 6, 2014, forming the Special Litigation Committee. (Rosenberg Decl. ¶5 & Coffey Ex. 3, at 2). The resolution granted the Committee "full and exclusive power" to "investigate, review, and analyze the facts, circumstances, and legal claims that are the subject of" the Sokolowski Demand and "any additional shareholder demands raising the same, similar, or related allegations [the 'Shareholder Demands']." (Coffey Ex. 3, at 3-4). The Board's resolution also authorized the Committee to "consider and determine whether or not the Company's prosecution of the claims asserted in the Shareholder Demands is in the best interests of the Company and its shareholders, and to further consider and determine what action shall be taken on behalf of the Company with respect to the Shareholder Demands." (Id., at 3). The resolution provided that the Committee's determination "shall be final, shall not be subject to review by the Board of Directors, and shall in all respects be binding upon the Company to the fullest extent permissible under Florida law." (Id.). Mr. Korn—along with two other Independent Directors, Messrs. Lacy and Salcetti—were appointed to the Committee. (Rosenberg Decl. ¶5 & Coffey Ex. 3, at 2).

**B. Pending Actions Concerning Alleged Ocwen Misconduct**

**1. Mr. Sokolowski's Shareholder Derivative Action**

On December 22, 2014, Ocwen entered into a consent order and settlement with the New York Department of Financial Services ("DFS") (Coffey Ex. 9 ("Consent Order")). Two days later, Mr. Sokolowski filed this shareholder derivative action. On February 11, 2015, he filed the Amended Complaint, which alleges that the individual defendants "violated their fiduciary duties and exposed Ocwen to substantial harm by concealing from shareholders and the investing public known failures with respect to the Company's compliance with state and federal regulations governing the servicing of mortgage loans" (¶1); including by "backdating" letters to borrowers (¶¶23-24); and by permitting [Mr. Erbey] to engage in a series of related party transactions with companies in which [he] and other defendants have significant ownership interests" (¶1), namely Altisource, Altisource subsidiary Hubzu, HLSS, RESI, and AAMC. Many of the allegations track language in the Consent Order and a series of letters promulgated by DFS (the "DFS Letters") before the Consent Order had been signed. (See, e.g., ¶¶109-26).

Based on these core allegations, Mr. Sokolowski contends that defendants breached their fiduciary duties to Ocwen. According to Mr. Sokolowski, this misconduct

"resulted in, *inter alia*, increased regulatory scrutiny and regulatory sanctions including substantial fines and penalties, exposure to significant potential liabilities from numerous lawsuits, severe damage to Ocwen's business and reputation[,] and a drastic decline in the Company's stock price." (¶1; *see also* ¶252). On account of this supposed misconduct, Mr. Sokolowski alleges that the individual defendants are "liable to the Company in an amount which cannot presently be determined." (¶264).

In addition to his derivative common law claims, Mr. Sokolowski purports to bring an individual claim for violation of Section 14(a) of the Exchange Act, and a derivative claim for violation of Section 20 of the Exchange Act. Mr. Sokolowski alleges that the Company's 2014 Proxy Statement "failed to disclose key facts including that Ocwen had opted to pursue business relationships with [Altisource, HLSS, RESI, and AAMC] despite known facts regarding conflicts of interests and regulatory shortcomings that would result from those dealings." (¶¶223, 245-57). The claim tracks one of his derivative claims, Count V, alleging that defendants breached their duty of candor by causing Ocwen to disseminate "materially false and misleading" securities filings, including the Company's 2014 Proxy Statement. (¶¶271-73).

### 2. Putative Class Action By Ocwen Shareholders

Between August 12 and August 18, 2014, three lawsuits were filed in this District on behalf of a putative class of Ocwen shareholders. Those actions were consolidated by order of this Court on November 5, 2014 under *In re Ocwen Financial Corporation Securities Litigation*, No. 9:14-CV-81057-WPD (S.D. Fla.) ("Ocwen Class Action") (Coffey Ex. 7). On December 8, 2014, the lead plaintiff in that action filed a consolidated complaint; on February 6, 2015, the lead plaintiff amended that complaint. (*See* Coffey Decl. ¶12 & Ex. 8).

As in this case, the Ocwen Class Action pleading alleges that Ocwen failed "to service loans . . . in compliance with regulatory requirements" (Coffey Ex. 8, at ¶¶127-42), including by "backdat[ing] homeowner communications" (*id.*, at ¶¶166-94). It also pleads that Ocwen did not have in place adequate controls for preventing approvals of transactions between Ocwen and Altisource (*id.*, at ¶¶160-64), including Mr. Erbey's purported approvals at Ocwen of a transaction with Hubzu, an Altisource subsidiary (*id.*, at ¶¶200-03), and of "a [lender]-placed insurance transaction that funneled $65 million annually from Ocwen to Altisource" (*id.*, at

¶¶204-15). The lead plaintiff, like Mr. Sokolowski, repeatedly references the DFS Letters and Consent Order. (*See, e.g., id.*, at ¶¶264, 269, 290, 297, 319, 329, 339, 353, 379, 395, 407).[2]

### 3. Putative Class Action By Altisource Shareholders

On January 30, 2015, Ocwen was named as a defendant in another consolidated class action, filed in this District on behalf of a putative class of Altisource shareholders. (*See In re Altisource Portfolio Solutions, S.A. Securities Litigation*, No. 9:14-CV-81156-WPD (S.D. Fla.) (Coffey ¶17 & Ex. 10). The complaint in that action alleges that (i) Altisource and Ocwen improperly shared management (¶¶77-91); (ii) Altisource "over-charged Ocwen borrowers" for certain services (¶¶92-102); and (iii) Mr. Erbey did not recuse himself from "conflicted transactions" between Altisource and Ocwen, resulting in his "improperly funnel[ing] money to Altisource at borrowers' expense" (¶¶103-18). As in this case and in the Ocwen Class Action, the allegations in the Altisource class action rely heavily on the DFS Letters and Consent Order.

### 4. Additional Matters

Also in late January 2015, lawyers for a group of RMBS noteholders led by Blackrock Financial Management, Inc. ("Blackrock") and Pacific Investment Management Co. LLC ("PIMCO") sent to the trustee for 119 RMBS trusts a purported notice of default claiming that Ocwen had failed to perform as required under its mortgage servicing agreements with those trusts. (Coffey Ex. 11). The alleged bases for Ocwen's supposed non-performance include that Ocwen had engaged in improper loan modification practices, wrongfully profited from its use of Altisource to perform certain foreclosure services, and improperly used trust assets to settle regulatory and governmental investigations into its servicing practices. (*Id.*, at 3-11, 13-15, 17-18). Ocwen is contesting that notice of default. (Coffey ¶19).[3]

---

[2] Coffey Ex. 19 is a chart tracking similarities between the Sokolowski Action and the Ocwen Class Action.

[3] In June 2014, Blackrock, PIMCO, and others brought suit in New York state court against various trustees of RMBS trusts backed by mortgages serviced by Ocwen and other servicing entities. (Coffey Decl. ¶20). Plaintiffs subsequently dismissed their case, but re-filed it in the Southern District of New York. (*Id.*) That complaint alleges that the mortgage servicers had "violated state consumer laws in a number of ways." (Coffey Ex. 12, at ¶516). Plaintiffs alleged that Ocwen "fail[ed] to timely and accurately apply payments made by borrowers and fail[ed] to maintain accurate account statements;" "charg[ed] borrowers unauthorized fees for default-related services;" "impos[ed] [lender-]placed insurance on consumers when Ocwen knew or should have known that they already had adequate home insurance coverage;" and "provid[ed]

Separately—and also in late January 2015—a holder of notes in the HLSS Servicer Advance Receivables Trust sent a purported notice of default to the trustee of that trust, relying heavily on the DFS Consent Order. (Coffey Ex. 13). Like the allegations made in the Ocwen Class Action and Sokolowski complaints, that purported notice alleged that Ocwen "fail[ed] to timely and accurately apply payments made by borrowers and fail[ed] to maintain accurate account statements;" "charg[ed] unauthorized fees for default-related services;" "impos[ed] [lender]-placed insurance when [Ocwen] knew or should have known that borrowers already had adequate coverage;" and "fail[ed] to properly process borrowers' applications for loan modifications." (*Id.*, at 8-9). Ocwen is contesting that notice of default. (Coffey ¶21).

In addition to defending the matters described above, Ocwen is presently responding to information requests and subpoenas issued as part of an investigation by the Securities & Exchange Commission concerning, among other things, Ocwen's business dealings with Altisource, HLSS, AAMC, and RESI ("SEC Investigation"). (*See* Coffey Ex. 14, at 49; *see also* ¶¶48, 115, 198, 242, referencing SEC Investigation).

### C. The Special Litigation Committee Appoints Two New Members

Pursuant to the December 2014 Consent Order with DFS, Ocwen agreed to institute various governance reforms, accept rigorous monitoring safeguards for the next two-plus years, have Mr. Erbey resign as Executive Chairman effective January 15, 2015, and appoint to its board two new independent directors satisfactory to DFS. (Coffey Ex. 9, at ¶¶30-46, 50-52, 57). Phyllis Caldwell and Deforest Blake Soaries, Jr. joined Ocwen's Board in January 2015. Ms. Caldwell previously served as Chief of the Homeownership Preservation Office at the U.S. Department of the Treasury, responsible for oversight of housing market stabilization, economic recovery and foreclosure prevention initiatives established through the Troubled Asset Relief Program. (Rosenberg Decl. ¶7 & Ex. B). Dr. Soaries has served as Senior Pastor of the First Baptist Church of Lincoln Gardens in Somerset, New Jersey since 1990, has served as an independent director of the Federal Home Loan Bank of New York since 2009, and was appointed by President George W. Bush as a commissioner of the U.S. Election Assistance

---

false or misleading information in response to consumer complaints." (*Id.*) At least five other lawsuits have been brought against trustees of RMBS trusts backed by mortgages serviced by Ocwen, among others. Ocwen has not yet been named as a defendant in these lawsuits.

Commission, where he oversaw and managed distribution of funds for state election reform activities. (Rosenberg Decl. ¶7 & Ex. C).

On February 19, 2015, the independent members of Ocwen's Board passed a resolution appointing Ms. Caldwell and Dr. Soaries to replace Messrs. Korn and Salcetti on the Special Litigation Committee. (Rosenberg Decl. ¶7 & Coffey Ex. 15, at 2). Ms. Caldwell and Dr. Soaries were fully apprised of the work that the Committee and its counsel had performed to date. (Rosenberg Decl. ¶8).[4]

### D. On Account Of The Pendency Of Other Matters, The Special Litigation Committee Decides To Defer Determining Whether To Pursue The Pending Derivative Claims

On March 23, 2015, counsel to the Special Litigation Committee sent a letter to Mr. Sokolowski's counsel and others who had submitted pre-suit demands to Ocwen, reporting:

> After careful consideration of, among other things, the Other Matters (as defined below), the Special Litigation Committee has concluded, based on external factors unrelated to the merits of your allegations, that it is not in the best interests of the Company to proceed with a lawsuit based on your allegations at this time. As more fully described below, the Special Litigation Committee will remain in place, and will monitor the Other Matters, until those actions are resolved or a material change takes place in those actions, at which time the Committee will complete its evaluation of the claims you have asserted.

(Rosenberg Ex. D, at 1).

The Committee based its judgment principally on the pendency of the Other Matters which, it concluded, raise allegations similar to those pleaded by Mr. Sokolowski and others. Those ongoing matters included: (i) the Ocwen Class Action, (ii) the Altisource Class Action, (iii) the SEC Investigation, and (iv) litigation initiated and threatened by RMBS noteholders. (*Id.*, at 2-3). Citing these Other Matters, Committee counsel noted:

> The Committee is tasked with determining a course of action in response to the shareholder demands that is in the best interests of the Company and its shareholders. ***The Committee concludes that***

---

[4] Meanwhile, in February 2015, Mr. Salario, co-lead counsel to the Special Litigation Committee, departed Carlton Fields for the bench having been appointed to the Second District Court of Appeal in Tampa. (Rosenberg Decl. ¶6). Mr. Rosenberg of Carlton Fields continues his role in advising the Special Litigation Committee, principally assisted by Carlton Fields counsel and former federal prosecutor John Clabby. (*Id.*).

> *it is in the best interests of the Company and its shareholders to defer for now reaching any conclusion as to the viability of potential claims, the scope of any damages, and whether pursuing any such claims would be in the Company's best interests.*

(*Id.*, at 4 (emphasis added)).

Carlton Fields enumerated several factors that informed the Committee's decision to defer.  As counsel reported, (i) "pursuing derivative claims could be in effect an admission in the other matters;" (ii) "resolution of the other matters could inform the committee's judgment as to viability and damages;" (iii) "deferral will better allocate corporate resources;" (iv) "there is little or no prejudice from the deferral" given the work already performed by the Committee and its counsel, which had already reviewed hundreds of thousands of pages of documents and interviewed many Ocwen executives and employees; and (v) allegations of ongoing harm were addressed in the DFS Consent Order.  (*Id.*, at 4-5).  Counsel affirmed that the Committee will remain in place, monitor the Other Matters until those actions are resolved or experience a material change, and at that time complete its evaluation of the asserted claims; further, counsel would "update the Committee no less than quarterly, and more often as necessary and appropriate." (*Id.*, at 6).

In light of the Special Litigation Committee's decision, Ocwen asked Mr. Sokolowski to agree to a stay.  (Coffey Ex. 16).  He refused, seeking instead to tie a potential temporary stay to conditions inconsistent with the rationale for a stay and the role of the Committee. (*See* Coffey Exs. 17 & 18).

## III. ARGUMENT

### A. This Action Should Be Stayed Because Ocwen Faces Other Matters Concerning Substantially Similar Allegations.

A District Court "has the authority to issue a stay of the proceeding pending resolution of a related matter in another court." *NIACCF, Inc. v. Cold Stone Creamery, Inc.*, 2012 WL 1852941, at *1 (S.D. Fla. May 21, 2012).  This power "'is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants.'"  *Cisco v. National Ins. Co.*, 2006 WL 2789035, at *1 (M.D. Fla. Sept. 26, 2006), *citing Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1938).

In determining whether to grant a stay, courts generally consider three factors: (i) the hardship or inequity that a party may suffer if required to go forward; (ii) considerations of judicial economy and efficiency; and (iii) possible damage or prejudice resulting from a stay. *See Miccosukee Tribe of Indians of Fla.*, 559 F.3d at 1198 (affirming stay pending appeal in another case "likely to have a substantial or controlling effect on the claims and issues in the stayed case"); *Turner Ent'mt Co. v. Digito Film Gmbh*, 25 F.3d 1512, 1523 (11th Cir. 1994) ("we readily conclude that concerns regarding judicial efficiency militate strongly in favor of staying or dismissing the initial action in favor of" pending litigation overseas); *In re Pinchuk*, 2014 WL 1328484, at *2 (S.D. Fla. Mar. 31, 2014) (considering "fairness to litigants" and prejudice in deciding whether to grant stay).

These factors all weigh heavily in favor of the present motion. Indeed, when faced with the situation here—a shareholder derivative action paralleled by federal securities class actions or other litigation raising similar issues—courts have consistently stayed the derivative claims pending the outcome of parallel matters. "Courts generally stay a shareholder derivative suit until the culmination of a securities class action when the cases arise from the same factual allegations and the evidence in the former could jeopardize the Company's defense in the latter." *In re STEC, Inc. Derivative Litig.* ("*STEC Deriv. Litig.*"), 2012 WL 8978155, at *4 (C.D. Cal. Jan. 11, 2012) (collecting cases).

### 1. <u>Moving Forward With This Litigation Could Substantially Harm Ocwen.</u>

Proceeding with Mr. Sokolowski's action could put Ocwen—on whose behalf he purports to sue—in a position that harms the Company in the Other Matters. As alluded to in the Committee's March 23 letter (*see* Rosenberg Ex. D, at 4-5), the Sokolowski Complaint implicates material issues in each of the following Other Matters:

- the Ocwen Class Action Complaint, concerning Ocwen's loan servicing practices (¶¶ 1, 5, 13, 15, 45, 141-142, 178); compliance with the terms of regulatory settlements (¶¶ 4, 10-11, 17, 22-24, 87-90, 101, 109-127, 142, 178); transactions with Altisource (¶¶ 6-9, 12-13, 17-20, 22, 33, 51-58, 75-76, 92, 94, 109, 114, 118, 120, 141, 228), Altisource subsidiary Hubzu (¶¶ 7, 33, 55-56, 114, 142) and HLSS (¶¶ 7, 33, 65-68, 75-76, 109, 113, 121, 141); as well as alleged misrepresentations to shareholders;

- the Altisource Class Action Complaint, alleging false or misleading disclosures by Ocwen concerning its relationship with Altisource (¶¶ 6-9, 12-13, 17-20, 22, 33, 51-58, 75-76, 92, 94, 109, 114, 118, 120, 141, 228), and certain mortgage-servicing practices (¶¶ 1, 5, 13, 15, 45, 141-142, 178);

- the SEC Investigation, concerning the Company's business dealings with Altisource, HLSS, AAMC, and RESI (¶¶ 6-9, 12-13, 17-20, 22, 33, 51-68, 75-76, 92, 94, 109, 113-14, 118, 120-21, 141, 228);

- litigation by RMBS noteholders who have asserted that their trustees improperly allowed Ocwen and other servicers to service improperly the mortgages underlying their notes (*cf.* ¶¶ 1, 5, 13, 15, 45, 141-142, 178); and

- notices of default by noteholders complaining about the Company's servicing practices (*cf.* ¶¶ 1, 5, 13, 15, 45, 141-142, 178).

Mr. Sokolowski alleges that defendants were responsible for the purported misconduct described in the above matters. (¶¶ 234-44). Were Ocwen—or Mr. Sokolowski, on behalf of Ocwen—to pursue litigation against the defendant directors, Ocwen could be forced to take positions that would be tantamount to an admission of liability in the Other Matters. Alternatively, because this action overlaps with the Other Matters, a judgment against the Ocwen directors here could be used against Ocwen in those actions.

Courts typically stay a derivative action to prevent harm posed by a plaintiff's attempts to "prove allegations that would seriously undermine [the Company's] defense of [a pending] class action." *Cucci v. Edwards*, 2007 WL 3396234, at *2 (C.D. Cal. Oct. 31, 2007). For example, in *Furman v. Walton*, 2007 WL 1455904 (N.D. Cal. May 16, 2007), *aff'd*, 320 Fed. Appx. 638 (9th Cir. 2009), a plaintiff shareholder submitted to Wal-Mart a pre-suit demand citing Wal-Mart's failure to "properly oversee, control and govern Wal-Mart's business and affairs" and "ensure Wal-Mart's compliance with applicable anti-discrimination laws." Upon the recommendation of the Wal-Mart Audit Committee, the board decided not to pursue the litigation at that time, deferring final action on the demand until resolution of a pending class action employment discrimination case. *Id.* at *1. The shareholder then filed a derivative complaint. The court dismissed the action, noting the board's conclusion that pursuing the action demanded by the shareholder "would in effect be an admission in the [employment discrimination class action] and in the other actions," and that permitting the case to go forward "would expose Wal-Mart to substantial liabilities for damages in those cases and would not be in the best interests of the corporation." *Id.* at *5. The Ninth Circuit Court of Appeals affirmed, holding that "The board asserted that bringing suit as per [plaintiff's] demand might have constituted a harmful admission in litigation pending against Wal-Mart," and plaintiff "cannot refute this compelling business purpose." 320 Fed Appx. at 640.

Similarly, in *In re Ormat Technologies Inc. Derivative Litig.*, 2011 WL 3841089 (D. Nev. Aug. 29, 2011), the court stayed a derivative suit pending the outcome of a parallel securities class action, principally in light of "the potential harm to Ormat, the party on whose behalf this derivative suit has been brought."   The court held that "[p]rosecution of this derivative action will 'conflict with [Ormat's] defense of the pending class action[].'"  *Id.* at *4-*5 (citation omitted).

Florida courts have followed this rule as well, staying derivative litigation when presented with parallel litigation. In *Pilevsky v. Morgan Hotel Group Management LLC*, 961 So. 2d 1032 (Fla. 3d DCA 2007), the court stayed a Florida derivative suit pending resolution of another action between the parties in New York.  The court held that since "many of the issues in the Florida action will be resolved by the New York action, it is necessary to stay the Florida action until such time as the New York action is concluded."  *Id.* at 1036.  *See also STEC Deriv. Litig.*, 2012 WL 8978155, at *5 (staying derivative action pending the outcome of parallel securities class action, and noting: "Because the very evidence that would tend to prove Plaintiff's case—i.e., that STEC's officers and directors made false and misleading statements that violated securities law—would also severely undermine STEC's defense in the Federal Securities Class Action, it is likely that STEC will suffer a hardship or inequity if the stay is denied."); *Rosenblum v. Sharer*, 2008 WL 9396534, at *8 (C.D. Cal. Jul. 28, 2008) (staying shareholder derivative action on account of pending class action securities action; denying stay "will potentially cause substantial harm to [company]" in light of overlapping liability issues).[5]

---

[5] It is also worth noting the collateral harm that Ocwen may suffer if this case proceeds.  Ocwen and its management would have to expend substantial time, money and effort resisting a wide-ranging and expensive litigation.  At a time when Ocwen faces, among other challenges, several major litigations, tangible threats to its role as servicer on over 100 RMBS trusts, an increasingly rigorous regulatory regime, and changes in management and Board composition, the Company's resources are better allocated addressing the allegations in the federal securities actions—especially since, as discussed in the following pages, resolution of those cases could bear on the outcome of the claims asserted here.  On this ground too, a stay is warranted.  *See STEC Deriv. Litig.*, 2012 WL 8978155, at *6 ("because diverting financial and managerial resources to this action at this time is likely not in [the company's] best interest, the first factor militates toward granting a stay").

**2. Proceeding With This Litigation Would Be Premature And Thus Judicially Inefficient.**

This case should be stayed as well because any damages that may be awarded in this case, and even liability, may depend on the outcome of the Other Matters. It is thus judicially efficient to await the outcome of those Other Matters before proceeding here.

Mr. Sokolowski has himself put the outcome of these other matters at issue by alleging that the individual Defendants' fiduciary duty breaches "resulted in, *inter alia*, increased regulatory scrutiny and regulatory sanctions including substantial fines and penalties, exposure to significant potential liabilities from numerous lawsuits, severe damage to Ocwen's business and reputation[,] and a drastic decline in the Company's stock price." (¶1; *see also* ¶ 252). As Mr. Sokolowski himself pleads, the individual defendants could be "liable to the Company in an amount *which cannot presently be determined*," on account of the pendency of these other litigation matters. (¶264 (emphasis added)). *See also* ¶239 (alleging harm "to an extent not fully capable of determination").

Courts facing similar allegations of inchoate damage have stayed shareholder derivative cases in favor of parallel proceedings. "[M]any courts have stayed derivative actions, finding that they were premature because the securities class action had not yet been resolved." *STEC Deriv. Litig.*, 2012 WL 8978155, at *8. *See also Brenner v. Albrecht,* 2012 WL 252286, at *6 (Del. Ch. Jan. 27, 2012) (staying derivative action asserting claims for breach of fiduciary duty and indemnity for parallel ongoing securities actions because "the full extent of damages will not be known until the Securities Class Action is resolved, i.e., the costs to defend it and the amount of any settlement or judgment").

The outcome of the two pending securities fraud class actions could also have a significant bearing on liability. If Ocwen is exonerated in other matters alleging the same misconduct as here, then "it is unclear what, if anything, would be left of the derivative action." *Rosenblum*, 2008 WL 9396534, at *8 (granting stay). *See also Cucci*, 2007 WL 3396234, at *2 (granting stay, in part because dismissal of securities action would leave derivative plaintiffs "little basis for pursuing" claim on corporation's behalf). Conversely, a finding of liability in the Other Matters could bear on liability here. *See STEC Deriv. Litig.*, 2012 WL 8978155, at *6 (staying derivative suit on account of pendency of federal securities action; "the outcome of the Federal Securities Class Action will bear at least on the prudence of pursuing the derivative

13

action," since "if STEC's directors are found liable for wrongdoing in the Federal Securities Class Action, it is likely in STEC's best interest to pursue the derivative claim").

Against this backdrop, proceeding with this action before resolution of liability and damages issues raised in parallel litigations would frustrate principles of judicial economy.

### 3.  <u>Plaintiff Will Suffer Little If Any Prejudice If A Stay Is Granted</u>

The issue with respect to prejudice is not whether the derivative plaintiff will suffer no prejudice at all, but rather whether any purported prejudice outweighs the harm to defendants as well as considerations of judicial efficiency—two factors that, as set forth above, overwhelmingly favor a stay. *Brenner*, 2012 WL 252286, at *7. In any event, Mr. Sokolowski will suffer scant if any prejudice if a stay is granted.

To the extent plaintiff seeks an order directing Ocwen "to take all necessary actions to reform and improve its corporate governance, compliance and internal control procedures" (Complaint at p. 105 (Prayer for Relief)), the DFS Consent Order already obligates Ocwen to undertake significant reforms including, among other measures, requiring Ocwen to: (i) appoint two new independent directors satisfactory to the DFS monitor (Coffey Ex. 9, at ¶¶50-52); (ii) replace Mr. Erbey as chair of Ocwen's Board (given his mandated resignation from Ocwen and the other related companies effective January 15, 2015) (*id.*, at ¶57); (iii) retain an independent DFS-selected "Operations Monitor" to review and assess the adequacy and effectiveness of Ocwen's servicing operations for at least two years (*id.*, at ¶30-46); and (iv) put in place standards and procedures to mitigate conflicts of interest, including by conducting semi-annual benchmarking studies of pricing and performance standards with respect to certain fees or expenses charged by any related party and by agreeing not to share common officers or employees with any related party (*id.*, at ¶¶53-56). These sweeping changes, and the ongoing oversight of the Operations Monitor, provide ample comfort that improved "corporate governance and internal procedures" are already in place or being implemented.

Likewise minimizing any potential prejudice, the Special Litigation Committee has already devoted significant time and resources investigating plaintiff's allegations, reviewing hundreds of thousands of documents and interviewing many Ocwen executives and employees. (Rosenberg Ex. D, at 5). The Committee reports that it will continue to monitor the Other Matters and will resume the active phase of its work when appropriate. (*Id.*). The status quo will thus be preserved, protecting plaintiff. The Court too can reduce any prejudice by

"remain[ing] flexible and open to revisiting the situation as events develop." *Brudno*, 2003 WL 1874750, at *5 (Del. Ch. Apr. 1, 2009). *See also Brenner*, 2012 WL 252286, at *7 (granting stay; "the Court's willingness to reconsider the propriety of a stay from time to time will serve to redress promptly any excessive and unexpected burden that such a stay ultimately might cause").

Finally, the filing of the Complaint has stayed the running of the statute of limitations. *See Furman*, 2007 WL 1455094, at *5 (no prejudice to plaintiff occasioned by stay of derivative action where "the potential expiration of Wal-Mart's claims against the defendant is no longer an extant consideration"). In the interim, a broad litigation hold to preserve any potentially relevant documents will remain in force at Ocwen. (*See* Coffey Decl. ¶2).

### B. A Stay Of This Action Would Be Consistent With The Business Judgment Of Ocwen's Special Litigation Committee.

Ocwen's case for a stay is actually far stronger than that presented in the cases cited above, for the Court has before it the Special Litigation Committee's decision *not* to proceed with any derivative claims at this time. Under well-established Florida law, this Court should defer to the Special Litigation Committee's judgment.

#### 1. Florida Corporate Law Contemplates Judicial Deference to Special Litigation Committees.

By statute, a "court may dismiss a derivative proceeding if, on motion by the corporation, the court finds that" a committee composed of two or more independent directors "has made a determination in good faith after conducting a reasonable investigation upon which its conclusions are based that the maintenance of the derivative suit is not in the best interests of the corporation." Fla. Stat. Ann. § 607.07401(3). Though this section addresses outright dismissal—a course more severe than the stay called for by the Special Litigation—the statute and applicable case law are instructive: if courts applying Florida law must respect a reasonable, independent, and good faith decision to terminate litigation, then surely a decision to defer litigation should be respected as well.

Moreover, Fla. Stat. Ann. § 607.07401(2) provides that a shareholder derivative proceeding may be stayed "if the corporation commences an investigation of the charges made in the demand or complaint . . . until the investigation is completed." The Committee has decided merely to pause its investigation, deferring completion of its efforts while the Other Matters unfold. Accordingly, a stay of this action is also proper under Fla. Stat. Ann. § 607.07401(2).

## 2. The Special Litigation Committee's Determination Is Reasonable And Made In Good Faith By Independent Directors.

Mindful of the statutory framework described above, Florida courts do not engage in review of the reasonableness of the substantive merits of a board's decision unless it has concerns about "the independence, neutrality, or good faith of the [ ] committee." *Atkins v. Topp Telecom., Inc.*, 874 So. 2d 626 (Fla. 4th DCA 2004), *review denied*, 890 So. 2d 1114 (2004). No such concerns arise here.

With regard to independence, courts ask whether "a director is, for any substantial reason, incapable of making a decision with only the best interest of the corporation in mind." *Klein v. FPL Grp. Inc.*, 2004 WL 302292, at *19 (S.D. Fla. Feb. 5, 2004). "While issues of 'dominance and control' or 'financial interest' are certainly factors to be considered as components of the test, the Florida statute does not make them 'exclusive' factors in determining independence." *Id.* Courts instead apply a "totality of the circumstances" test, considering the following indicia: "(1) a committee member's status as a defendant and potential liability; (2) a committee member's participation in or approval of the alleged wrongdoing; (3) a committee member's past or present business dealings with the corporation; (4) a committee member's past or present business or social dealings with individual defendants; (5) the number of directors on the committee; and (6) the 'structural bias' of the committee," or "whether [the] manner in which the [decision-maker] was appointed and proceeded was one which was inevitably bound to be empathetic to defendants, and, therefore, biased in favor of terminating the litigation." *Id.* at *18, 18 n.35.

For each of these indicia, the Committee's independence is beyond question. Ms. Caldwell and Dr. Soaries are not named as defendants in this action. (*Factor 1*). Nor are they alleged to have participated in any of the purported misconduct described in the Complaint. (*Factor 2*). In fact, they did not join Ocwen's Board until after the alleged misconduct is said to have occurred. And they are not alleged to have had any business or personal dealings with either Ocwen or any of the defendants beyond membership on the same board. (*Factors 3 & 4*). To the contrary, they joined pursuant to a Consent Order with a state regulator directing Ocwen to appoint two new independent directors. Nor is there any suggestion that their appointment to the Committee—effectuated by Board resolution after Mr. Erbey departed Ocwen—"inevitably makes them empathetic" toward defendants. (*Factor 6*). In fact, the Committee's conclusion

that this action should be stayed rather than terminated undermines any suggestion that its members unreasonably favor defendants.

Any challenge to the independence of the remaining Committee member—Mr. Lacy—should similarly fail. Like Ms. Caldwell and Dr. Soaries, Mr. Lacy is an independent director. He has substantial experience in the mortgage industry and has served on the boards of several public companies. (Rosenberg Ex. A). Mr. Lacy is not alleged to have had personal or business dealings with Ocwen or any of the other defendants. And Messrs. Erbey and Faris recused themselves from a vote on the resolution appointing Mr. Lacy to the Committee. (Rosenberg Decl. ¶7 & Coffey Ex. 15). Although Mr. Sokolowski may note that he included Mr. Lacy as a defendant, suing a committee member does not by itself taint his or her independence. *See Lewis v. Graves*, 701 F.2d 245, 249 (2d Cir. 1983) (demand was not excused simply because plaintiff named as defendants more than majority of the board); *Moore's Federal Practice* § 23.1.08(3)(c)(ii) (citing *Lewis* for proposition that interest may not be attributed to committee members simply by being named as defendants). Were the rule otherwise, "plaintiffs could readily circumvent the demand requirement merely by naming as defendants all members of the derivative corporation's board." *Lewis*, 701 F.2d at 249. Beyond that, the allegations in the Complaint do not concern Mr. Lacy in any meaningful way. (*See* ¶¶112, 186, 192).[6]

Florida courts consider as indicative of good faith the ability to review a decision-maker's progress throughout the investigation. *Atkins* 874 So.2d at 627. To that end, the Committee has disclosed and explained its reasons for deciding to defer, including that (i) proceeding at this time could damage Ocwen in the Other Matters; (ii) deferral will better allocate corporate resources and will not prejudice any derivative plaintiff; (iii) the investigation has substantially progressed and may resume as appropriate; and (iv) allegations of ongoing harm have been addressed by the DFS Consent Order. (Rosenberg Ex. D, at 4-5). Because the

---

[6] With respect to the fifth independence factor, the Committee—consisting of three independent directors including the two new directors—clearly passes muster. *Cf.* Fla. Stat. Ann. § 607.07401 (2003) (allowing corporation to reject shareholder's pre-suit demand when rejection is made by "a majority vote of a committee consisting of two or more independent directors appointed by a majority vote of independent directors present at a meeting of the board of directors").

Committee's inquiry has been in good faith, and in light of the Committee's independence and neutrality, the reasonableness of the Committee's inquiry cannot be challenged.[7]

Allowing Mr. Sokolowski to pursue this case now would improperly strip the Company—on whose behalf he purports to sue—of its ability to govern its own matters and determine Ocwen's best interests. *Cf. Kaplan v. Wyatt*, 484 A.2d 501, 509 (Del. Ch. 1984) (recognizing that ability of shareholder to sue on behalf of corporation threatens to strip board of directors of its core role as manager of business affairs of corporation, and noting that appointment of special litigation committee exercising business judgment returns authority of controlling litigation back to board). In fairness to Ocwen, and if the well-settled prudential considerations described above are to have any effect, the Court should respect the Special Litigation Committee's decision—a measured recommendation that merely stays this case, permits the Committee to fulfill its responsibilities as the Other Matters move forward, preserves the status quo, and at the same time avoids the prospect of significant harm to Ocwen.

### C.  Mr. Sokolowski's Section 14(a) Claim Should Not Proceed At This Time.

Mr. Sokolowski has tacked on a claim against the individual defendants under Section 14(a).  (¶246).  Though purportedly brought directly, this claim should be treated for what it basically is—derivative—and thus stayed along with the rest of his lawsuit.

"Whether a claim is direct or derivative is a matter of state law." *Kammona v. Onteco Corp.,* 962 F. Supp. 2d 1299, 1302 (S.D. Fla. 2013), *aff'd,* 587 Fed. Appx. 575 (11th Cir. 2014) (citations omitted).  Under the law of Florida, Ocwen's state of incorporation, "[a] shareholder may bring individual action for injuries suffered directly by the shareholder that are separate and distinct from injuries to all other shareholders." *Id.* (citations omitted).  But "a shareholder does not have an individual cause of action for damages that result from injury to the corporation.  If the gravamen of the complaint is injury primarily to the corporation or to the shareholders generally, then the claim belongs to the corporation and the shareholder's right to bring the action derives from the corporation." *Id.* at 1302-03 (citations omitted).  It is not enough for a plaintiff simply to assert that a claim is direct.  Whether a claim is derivative or direct "is determined from the body of the complaint rather than from the label employed by the

---

[7] Even though the Court need not address the merits of the Special Litigation Committee's decision, there can be no doubt that the underlying rationale for its decision was reasonable as well because, as demonstrated in Section A above, the Committee's decision conforms with governing legal principles as well as policy considerations.

parties." *Id.   See also Official Comm. of Unsecured Creditors of BankUnited Fin. Corp. v. F.D.I.C.*, 2011 WL 10653884, at *2 (S.D. Fla. Sept. 28, 2011) (courts look to body of complaint to prevent "shareholders from using the titles of their pleadings to dictate the cause of action rather than the substance of the allegations in their complaint").

With respect to Section 14(a) claims like Mr. Sokolowski's, the Supreme Court has long recognized that "[t]he injury which a stockholder suffers from corporate action pursuant to a deceptive proxy solicitation ordinarily flows from the damage done the corporation, rather than from the damage inflicted directly upon the stockholder.  The damage suffered results not from the deceit practiced on him alone but rather from the deceit practiced on the stockholders as a group." *J. I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964).

Based on this precedent, courts ruling on similar stay motions have treated purportedly direct claims brought under Section 14(a) as derivative or partly derivative.  For example, in *Rudolph v. Cummins*, 2007 WL 1189632 (S.D. Tex. Apr. 19, 2007), a plaintiff brought five derivative claims along with a purportedly direct claim under 14(a).  The defendant company sought a stay until the board's special litigation committee completed an investigation of the plaintiff's allegations.  In examining "whether this 'direct' claim is in fact direct or derivative," the court stayed the entire action and ruled that "[b]y purporting to bring a claim for damages suffered by the corporation, Plaintiff has asserted a classical derivative action." *Id.* at *2.  Noting that the five claims that plaintiff brought in addition to his 14(a) claim were derivative and should be stayed pending the special litigation committee's investigation, the court ruled that "[t]o the extent Plaintiff alleges a direct Section 14(a) claim, [the count] should still be stayed for efficiency purposes." *Id.* at *3 ("Having already determined that a stay is appropriate as to [the five derivative] claims, it is inefficient to allow one claim, whether direct or derivative, to proceed."). *Cf. St. Clair Shores Gen. Employees Ret. Sys. v. Eibeler*, 2006 WL2849783, at *8 (S.D.N.Y. Oct. 4, 2006) (treating purportedly direct 14(a) class action claim as derivative for purposes of stay motion since alleged harm caused by deceptive proxy statement flowed primarily to corporation, and ruling that all claims, including 14(a) claim, should be stayed pending special litigation committee investigation).

Here, Mr. Sokolowski asserts that alleged material omissions in Ocwen's 2014 Proxy Statement caused "frustration of [his] personal suffrage rights as an Ocwen shareholder" and also "proximately caused the Company direct and indirect economic and other damages."

19

(¶250). Mr. Sokolowski additionally alleges that "the suffrage rights of Plaintiff and *each other shareholder* of the Company have been violated" as a result of the 2014 Proxy Statement. (¶254 (emphasis added)). By these and other admissions, Mr. Sokolowski concedes that any purported 14(a) violation would have damaged other shareholders—and Ocwen as a whole—thus belying the assertion that his 14(a) claim is direct. *Cf. Kammona*, 962 F. Supp. 2d at 1303 (where "all stockholders in [a corporation] could make the same argument" as plaintiff claiming that his voting rights were affected by corporation's reverse stock splits, then allegation at issue was "distinctly derivative in nature").

In fact, elsewhere in his complaint Mr. Sokolowski effectively acknowledges that his Section 14(a) claim is derivative. In Count V, he pleads a "Breach of Duty of Candor" claim on behalf of Ocwen, asserting that "the Company's Proxy Statements," including presumably the 2014 Proxy Statement, were "materially false and misleading." In other words, Mr. Sokolowski's supposed direct 14(a) claim coincides with one of his derivative claims.

Mr. Sokolowski's alleged injury was suffered by shareholders generally—a derivative claim; on that ground, and in light of the prudential considerations set forth in Sections A and B above, this claim should be stayed along with the rest of the action.

## IV. <u>CONCLUSION</u>

For these reasons, the Court should stay this action, including any future pleadings or motions, pending the outcome of the Other Matters described above.

GREENBERG TRAURIG, P.A.
401 East Las Olas Boulevard, Suite 2000
Fort Lauderdale, Florida  33301
Telephone:      (954) 765-0500
Facsimile:      (954) 765-1477

*/s/ Jeffrey Allan Hirsch*
JEFFREY ALLAN HIRSCH
Florida Bar No. 199850
Email: hirschj@GTLAW.com

-and-

KRAMER LEVIN NAFTALIS & FRANKEL LLP |
1177 Avenue of the Americas
New York, New York 10036
Telephone: 212-715-9100
Facsimile: 212-715-8456
*/s/ John P. Coffey*
John P. Coffey
Email: scoffey@kramerlevin.com
Jonathan M. Wagner
Email: jwagner@kramerlevin.com
Jason M. Moff
Email:  jmoff@kramerlevin.com;

*Attorneys for Nominal Defendant Ocwen Financial
Corporation and Defendants Ronald M. Faris and
William C. Erbey*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 13th day of April, 2015, I served the foregoing on all

counsel of record identified on the below Service List via CM/ECF or by electronic mail.

*Jeffrey Allan Hirsch*
JEFFREY ALLAN HIRSCH

<u>**SERVICE LIST**</u>

<u>**COUNSEL FOR PLAINTIFF**</u>

Theodore Jon Leopold
Cohen Milstein Sellers & Toll, PLLC
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Telephone: 561-515-1400
Fax: 561-515-1401
Email: tleopold@cohenmilstein.com

Richard D. Greenfield
Greenfield & Goodman
250 Hudson Street. 8th Floor
New York, NY 10013
Telephone: 917-495-4446
Fax: 745-4158
Email: whitehatrdg@earthlink.net

Richard A. Speirs
Cohen Milstein Sellers & Toll, PLLC
88 Pine Street
14th Floor
New York, NY 10005
Telephone: 212-838-7797
Email: rspeirs@cohenmilstein.com

Steven J. Toll
Cohen Milstein Sellers & Toll, PLLC
1100 New York Avenue, NW
Suite 500
Washington, DC 20008
Telephone: 202-408-4600
Fax: 521-0166
Email: stoll@cohenmilstein.com