**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

W.A. SOKOLOWSKI, Individually and
Derivatively on Behalf of OCWEN
FINANCIAL CORP.,

               Plaintiff,

                  v.

WILLIAM C. ERBEY,  RONALD  M. FARIS,
RONALD J. KORN,  WILLIAM H. LACY,
BARRY  N. WISH,  ROBERT A. SALCETTI,
WILBUR ROSS, JOHN V. BRITTI,
ALTISOURCE PORTFOLIO  SOLUTIONS,
S.A., ALTISOURCE RESIDENTIAL
CORPORATION, ALTISOURCE ASSET
MANAGEMENT CORPORATION  and
HOME LOAN  SERVICING SOLUTIONS,

               Defendants,

              - and -

OCWEN FINANCIAL CORPORATION, a
Florida Corporation,

               Nominal Defendant.

Civil No. 9:14-cv-81601-WPD

---

**DEFENDANT ALTISOURCE RESIDENTIAL CORPORATION'S**
**MOTION TO DISMISS THE AMENDED COMPLAINT**

    Defendant Altisource Residential Corporation ("RESI"), by their undersigned counsel,

respectfully requests that the Court dismiss Plaintiff's Amended Complaint ("Complaint")

pursuant to Rules 8, 12(b)(2), 12(b)(6), and 23.1(b) of the Federal Rules of Civil Procedure.

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

ARGUMENT ...................................................................................................................... 4

I.   THE COURT LACKS PERSONAL JURISDICTION OVER RESI. ............................ 4

    A.   RESI is not subject to general jurisdiction in Florida. ......................................... 4

    B.   RESI is not subject to specific jurisdiction in Florida
       relating to the claims asserted. ............................................................................... 6

II.  PLAINTIFF FAILS TO STATE CLAIMS FOR RELIEF AGAINST RESI. .................. 8

    A.   The Complaint does not satisfy Rule 8(a). .......................................................... 8

    B.   The Complaint fails to state a claim for aiding and abetting a breach of
       fiduciary duty against RESI. .................................................................................. 9

        1.   Plaintiff fails to plead an underlying breach of a fiduciary duty. ............ 11

        2.   Plaintiff fails to plausibly allege that RESI substantially assisted
            the individual defendants' alleged breaches. ............................................ 11

        3.   Plaintiff fails to plausibly allege that RESI had actual knowledge. ......... 13

        4.   Plaintiff fails to plausibly allege proximate cause. .................................. 14

    C.   Plaintiff Fails to State a Claim for Unjust Enrichment Against RESI. ................. 14

III. THE IN PARI DELICTO DOCTRINE BARS PLAINTIFF'S CLAIMS
    AGAINST RESI. .................................................................................................... 16

IV.  THE PLAINTIFF LACKS STANDING BECAUSE HE FAILS TO ALLEGE
    WHEN HE PURCHASED OCWEN STOCK. .......................................................... 17

V.   ANY STAY OF THE ACTION SHOULD APPLY TO RESI. ..................................... 19

CONCLUSION ................................................................................................................. 19

# TABLE OF AUTHORITIES

CASES

*In re Accuray, Inc. S'holder Derivative Litig.*,
  757 F. Supp. 2d 919 (N.D. Cal. 2010) ...........................................................................17, 19

*In re Am. Apparel, Inc. S'holder Derivative Litig.*,
  2012 WL 9506072 (C.D. Cal. 2012)..................................................................................18

*In re Am. Int'l Grp., Inc., Consol. Derivative Litig.*,
  976 A.2d 872 (Del. Ch. 2009)............................................................................................16

*Arbitrajes Financieros, S.A. v. Bank of Am., N.A.*,
  2015 WL 1346096 (11th Cir. 2015) ...................................................................10, 11, 13, 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).............................................................................................................10

*In re Bank of New York Derivative Litig.*,
  320 F.3d 291 (2d Cir. 2003)................................................................................................18

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).................................................................................................10, 11, 13

*Bentley v. Bank of Am.*,
  773 F. Supp. 2d 1367 (S.D. Fla. 2011) ................................................................................9

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985)...........................................................................................................6, 8

*Cafaro v. Zois*,
  2015 WL 3821752 (S.D. Fla. 2015) ..............................................................................14, 15

*Carmouche v. Tamborlee Mgmt., Inc.*,
  __ F.3d __, 2015 WL 3651521 (11th Cir. 2015) ...........................................................4, 5, 6

*Clark v. Aaron's, Inc.*,
  914 F. Supp. 2d 1301 (N.D. Ga. 2012) ..............................................................................14

*Connell v. Riggins*,
  944 So. 2d 1174 (Fla. Dist. Ct. App. 2006) ........................................................................10

*Coquina Invs. v. Rothstein*,
  2012 WL 4479057 (S.D. Fla. 2012) ....................................................................................14

*Ct. Appointed Receiver of Lancer Offshore, Inc. v. Citco Grp. Ltd.*,
  2008 WL 926509 (S.D. Fla. 2008) ......................................................................................12

*Daimler AG v. Bauman,*
   134 S. Ct. 746 (2014) ...........................................................................1, 4, 5, 6

*Degirmenci v. Sapphire-Fort Lauderdale, LLLP,*
   693 F. Supp. 2d 1325 (S.D. Fla. 2010) ...........................................................15

*DiLorenzo v. Norton,*
   2009 WL 2381327 (D.D.C. 2009) ...................................................................18

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
   131 S. Ct. 2846 (2011) .................................................................................6, 7

*Graphic Packaging Holding Co. v. Humphrey,*
   416 F. App'x 1 (11th Cir. 2010) .....................................................................10

*Groom v. Bank of Am.,*
   2012 WL 50250 (M.D. Fla. 2012) ..................................................................12

*Hays v. Paul, Hastings, Janofsky & Walker LLP,*
   2006 WL 4448809 (N.D. Ga. 2006) ...............................................................13

*Jet Charter Serv., Inc. v. Koeck,*
   907 F.2d 1110 (11th Cir. 1990) .......................................................................8

*Kammona v. Onteco Corp.,*
   962 F. Supp. 2d 1299 (S.D. Fla. 2013) ...........................................................17

*Kirschner v. KPMG LLP,*
   938 N.E.2d 941 (N.Y. 2010) .....................................................................16, 17

*Kopel v. Kopel,*
   117 So. 3d 1147 (Fla. Dist. Ct. App. 2013) ....................................................15

*Lane v. Capital Acquisitions & Mgmt.,*
   2006 WL 4590705 (S.D. Fla. 2006) .................................................................9

*Sokolowski ex rel. Las Vegas Sands Corp. v. Adelson,*
   2014 WL 3748191 (D. Nev. 2014) .............................................................17, 18

*Living Color Enters., Inc. v. New Era Aquaculture, Ltd.,*
   2015 WL 1526177 (S.D. Fla. 2015) ................................................................12

*In re Maxim Integrated Products, Inc.,*
   2007 WL 2745805 (N.D. Cal. 2007) ...............................................................19

*In re Mirabilis Ventures, Inc.,*
   2011 WL 397788 (M.D. Fla. 2011) .................................................................16

iii

*O'Halloran v. PricewaterhouseCoopers LLP,*
   969 So. 2d 1039 (Fla. Dist. Ct. App. 2007) ....................................................13, 17

*Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards,*
   437 F.3d 1145 (11th Cir. 2006) .................................................................16

*Parker v. Brush Wellman, Inc.,*
   377 F. Supp. 2d 1290 (N.D. Ga. 2005) ..........................................................8

*Perkins v. Benguet Consol. Mining Co.,*
   342 U.S. 437 (1952) ..............................................................................5

*Perlman v. Wells Fargo Bank, N.A.,*
   559 F. App'x 988 (11th Cir. 2014) .............................................................13

*Peterson v. Winston & Strawn, LLP,*
   2012 WL 4892758 (N.D. Ill. 2012) .............................................................16

*Petrovic v. Princess Cruise Lines, Ltd.,*
   2012 WL 3026368 (S.D. Fla. 2012) ..............................................................9

*In re RINO Int'l Corp. Derivative Litig.,*
   2011 WL 5245426 (D. Nev. 2011) ...............................................................19

*Royal Acquisitions 001, LLC v. Ansur Am. Ins. Co.,*
   2015 WL 1437689 (S.D. Fla. 2015) ..............................................................6

*S&B/BIBB Hines PB 3 Joint Venture v. Progress Energy Fla., Inc.,*
   365 F. App'x 202 (11th Cir. 2010) .............................................................11

*In re Salomon Inc. S'holders Derivative Litig.,*
   1994 WL 533595 (S.D.N.Y. 1994) ...............................................................16

*SC Note Acquisitions, LLC v. Wells Fargo Bank, N.A.,*
   934 F. Supp. 2d 516 (E.D.N.Y. 2013) ..........................................................18

*Smith v. Stevens,*
   957 F. Supp. 2d 466 (S.D.N.Y. 2013) ..........................................................19

*Solomon v. Blue Cross & Blue Shield Ass'n,*
   574 F. Supp. 2d 1288 (S.D. Fla. 2008) ..........................................................9

*Tuck v. Off Shore Inland Marine & Oilfield Co.,*
   2013 WL 81135 (S.D. Ala. 2013) ................................................................9

*United Techs. Corp. v. Mazer,*
   556 F.3d 1260 (11th Cir. 2009) ..................................................................4

*Urquilla-Diaz v. Kaplan Univ.*,
    780 F.3d 1039 (11th Cir. 2015) ........................................................................................10

*VanZandt v. Okla. Dep't of Human Servs.*,
    276 F. App'x 843 (10th Cir. 2008) ...................................................................................9

*In re Verisign, Inc., Derivative Litig.*,
    531 F. Supp. 2d 1173 (N.D. Cal. 2007) ..........................................................................19

*Walden v. Fiore*,
    134 S. Ct. 1115 (2014) .................................................................................................6, 7

*White v. Shamrock Bldg. Sys., Inc.*,
    669 S.E.2d 168 (Ga. Ct. App. 2008) ..................................................................... *passim*

*World Traveling Fools, LLC v. Diamond Aircraft Indus., Inc.*,
    2014 WL 4102160 (S.D. Fla. 2014) ................................................................................6

## <u>INTRODUCTION</u>

This action is a shareholder derivative suit against officers and directors of Ocwen Financial Corporation ("Ocwen"). The plaintiff asserts that these individuals engaged in certain misconduct, causing Ocwen's stock to lose value. The amended complaint added four defendants, including RESI, that the plaintiff refers to, generally, as the "Aider and Abettor Defendants."

RESI is a publicly-traded real estate investment trust. Plaintiff alleges that RESI invests in real estate assets and that it has contractual agreements whereby it purchases property management services from Altisource and mortgage loan servicing from Ocwen.

This suit should be dismissed as to RESI for several reasons. To begin with, the plaintiff has offered no allegation—none whatsoever—that, if later proven, would establish that RESI is subject to personal jurisdiction in Florida with respect to these claims. In *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014), the Supreme Court recently held that a company is subject to general jurisdiction in only those places where it is incorporated, where it maintains its principal place of business, and—in exceedingly rare instances—where another location becomes a "surrogate" for the company's place of incorporation or headquarters. Because RESI is not incorporated or headquartered in Florida, and because nothing makes Florida a "surrogate" for RESI's place of incorporation or headquarters, general jurisdiction is unavailable. Additionally, while the plaintiff fails to allege that RESI engaged in *any* misconduct *anywhere*, the plaintiff certainly does not allege that its claims against RESI arise out of *RESI*'s alleged conduct *in Florida*. There is, accordingly, no basis for the Court to find specific jurisdiction.

Separately, the complaint does not state any plausible claim against RESI, and thus should be dismissed for failure to state a claim pursuant to Rule 12(b)(6). As an initial matter, Rule 8 requires the plaintiff, at minimum, to plainly state the basis for which he believes he can recover. The plaintiff fails this basic requirement on multiple levels. He does not identify what conduct by RESI be believes wrongful. And he improperly lumps together four so-called "Aider and Abettor Defendants." Rule 8 prohibits a plaintiff from relying on such generalized

1

allegations.

The plaintiff, moreover, fails to allege facts that, if proven, would establish necessary elements of the claims he asserts against RESI. The plaintiff broadly asserts an aiding-and-abetting theory, but, among several other defects, the plaintiff cannot allege that RESI did anything that amounts to "substantial assistance." The plaintiff also asserts unjust enrichment, but the plaintiff's failure to allege that RESI received any benefit—much less a *wrongful*, *unjust* benefit—bars his claim.

The plaintiff faces an additional problem. While the knowledge of a corporate officer or director is often imputed to the corporation, the "adverse interest" doctrine holds that there is no imputation of knowledge when the corporate agent is acting adversely to the interests of the corporate form. If, as the plaintiff alleges, Erbey was acting adversely to the corporate interests, then the plaintiff cannot allege that RESI actually knew about the underlying fraud—an indispensible element of his aiding and abetting claim. If, by contrast, the adverse interest doctrine does not apply, then the *in pari delicto* defense bars all of the plaintiff's claims against RESI. Either way, the claims cannot be maintained against RESI.

There is more: the plaintiff fails to satisfy a critical requirement of a shareholder derivative suit. Pursuant to Fed. R. Civ. P. 23.1, the plaintiff must state the *specific* date on which he acquired Ocwen stock. This is important because a plaintiff lacks standing to assert alleged misconduct that occurred prior to his purchase of stock and, moreover, courts generally prohibit a plaintiff, who purchased his or her stock after the initiation of public investigations that form the basis of the complaint, from pursuing a shareholder derivative suit. The plaintiff's failure to plead this essential element requires dismissal of the whole suit.

Finally, because the claims against RESI are derivative to the claims against the officer and director defendants, any stay entered as to those defendants should apply to RESI.

## **BACKGROUND**

The plaintiff brings this derivative action on behalf of Ocwen, alleging a breach of fiduciary duty against current and former officers and directors of Ocwen, which plaintiff terms

the "Individual Defendants." Compl. ¶ 1. In the Complaint, the plaintiff alleges that these individuals failed to comply with regulations governing the servicing of mortgage loans and concealed this failure from the investing public. *Id*. ¶¶ 249, 272. Further, the plaintiff claims that these individuals had conflicting loyalties and business relationships. *Id*. ¶ 259.

The plaintiff amended his Complaint on February 11, 2015, to add several additional defendants—Altisource Portfolio Solutions, S.A. ("Altisource"), Altisource Asset Management Corporation ("AAMC"), Home Loan Servicing Solutions ("HLSS"), and RESI. Compl. ¶ 1. Terming them, collectively, the "Aider and Abettor Defendants" (*id*. at 24), the plaintiff asserts that these four defendants aided and abetted the Individual Defendants' purported breaches of fiduciary duty and were unjustly enriched. *Id*. ¶ 1.

RESI is a real estate investment trust (REIT) traded on the New York Stock Exchange. RESI "was incorporated in Maryland and maintains its principal place of business in the U.S. Virgin Islands." Compl. ¶ 59. The plaintiff alleges that Ocwen spun off RESI (*id*. ¶ 75), that defendant Erbey owns 5% of RESI's stock (*id*. ¶ 59), and that Erbey previously served as RESI's chairman (*id*. ¶ 268).

As to RESI, the plaintiff alleges that:

- RESI acquires sub-performing and non-performing residential mortgage loans; it converts some of those assets to rental properties. Compl. ¶¶ 7, 59, 75.
- Altisource agreed to provide RESI with operational services. *Id*. ¶ 60.
- RESI entered into "long-term master service agreements" with Ocwen and Altisource. *Id*. Altisource provides "property management, leasing and construction management services." *Id*. Ocwen provides loan servicing for mortgage loans acquired by a RESI affiliate. *Id*. ¶ 61.

The plaintiff does not explain how, in his view, this alleged conduct by RESI was wrongful.

As to all four "Aider and Abettor Defendants," the plaintiff asserts:

- "The wrongdoing of each of the Individual Defendants and Aider and Abettor Defendants, as described herein, was an essential link in the damages caused and being caused to Ocwen and its shareholders as a result thereof." Compl. ¶ 240.
- "Each of the Aider and Abettor Defendants as well as Defendants Erbey and Wish profited unjustly from business directed to the foregoing entities as described above." *Id*. ¶ 269.

3

- "The Aider and Abettor Defendants knew and substantially assisted in the wrongful conduct which resulted in the breaches of the Individual Defendants' respective duties of loyalty to Ocwen and, as such, should be held accountable for the wrongful conduct at issue." *Id.* ¶ 275.

- With "knowledge" of the alleged breaches by the Individual Defendants, "the Aider and Abettor Defendants provided substantial assistance and encouragement of those breaches, and as such, should be liable under Florida law." *Id.* ¶ 276.

The plaintiff does not provide any further detail as to the claims against RESI specifically or the "Aider and Abettor Defendants" generally. The allegations against RESI are exceedingly sparse: RESI (counting the general "Aider and Abettor Defendant" allegations) is referenced in 12 paragraphs of plaintiff's 276-paragraph Complaint.

## ARGUMENT

## I.    The Court Lacks Personal Jurisdiction Over RESI.

Pursuant to Fed. R. Civ. P. 12(b)(2), the Court should dismiss the claims against RESI for a lack of personal jurisdiction. The plaintiff "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). Failure to satisfy this burden requires dismissal. *Id.*

Personal jurisdiction has two forms: general and specific. *Carmouche v. Tamborlee Mgmt., Inc.*, __ F.3d __, 2015 WL 3651521, at *2 (11th Cir. 2015). General jurisdiction exists "where a foreign corporation's 'continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings *entirely distinct from those activities*.'" *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (emphasis added). Specific jurisdiction, by contrast, exists when "the suit 'aris[es] out of or relate[s] to the defendant's contacts with the forum.'" *Id.* Here, the plaintiff has not alleged any facts that, if proven, would establish a basis for jurisdiction.

### A.    RESI is not subject to general jurisdiction in Florida.

In *Daimler*, the Supreme Court placed a sharp limitation on the reach of general jurisdiction: a defendant is subject to general jurisdiction where, and only where, it "'is fairly regarded as at home.'" *Daimler*, 134 S. Ct. at 760. For corporations, save for an "exceptional"

4

circumstance (*id*. at 756 & n.8), general jurisdiction is available in only the company's "place of incorporation and principal place of business." *Id*. at 760. *See also Carmouche*, 2015 WL 3651521, at *3 ("A corporation's place of incorporation and its principal place of business are 'paradigm all-purpose forums.'").

In *Daimler*, the plaintiffs asserted that, in addition to a corporation's place of incorporation and headquarters, general jurisdiction should be available "in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business.'" 134 S. Ct. at 761. The Supreme Court unequivocally rejected this proposed rule: "That formulation, we hold, is unacceptably grasping." *Id*. As the Court explained, "[g]eneral jurisdiction . . . calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home in all of them." *Id.* at 762 n.20.

Here, the plaintiff alleges that RESI is "incorporated in Maryland and maintains its principal place of business in the U.S. Virgin Islands." Compl. ¶ 59. Thus, the plaintiff can demonstrate that RESI is subject to general jurisdiction in Florida only if this is an "exceptional" case. *Carmouche*, 2015 WL 3651521, at *3 (quoting *Daimler*, 134 S. Ct. at 761 n.19). It is not.

A case is "exceptional" where a particular forum is "a surrogate" for the defendant's "place of incorporation or head office." *Daimler*, 134 S. Ct. at 756 n.8 (quotation omitted). That is, as the Eleventh Circuit recognized, "[a] foreign corporation cannot be subject to general jurisdiction in a forum unless the corporation's activities in the forum closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business." *Carmouche*, 2015 WL 3651521, at *4.

*Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952), "remains the textbook case of general jurisdiction appropriately exercised over a foreign corporation that has not consented to suit in the forum." *Daimler*, 134 S. Ct. at 755-56 (quotation omitted). In *Perkins*, after the corporate defendant's home forum, the Philippines, was occupied by the Japanese army during World War II, the defendant moved its headquarters and corporate records to Ohio. *Id.*

5

"[T]he point on which the opinion turned" was that "[a]ll of [the corporation's] activities were directed by the company's president from within Ohio." *Id*. at 756 n.8. Thus, at the time of suit, Ohio was the company's "'principal, if temporary, place of business.'" *Id*. at 756.

Plaintiff has alleged no facts that, if proven, would establish that Florida has become RESI's "surrogate" principal place of business or place of incorporation. Following *Daimler*, scores of courts have denied the exercise of general jurisdiction over non-Florida companies. *See, e.g.*, *Carmouche*, 2015 WL 3651521, at *4; *Royal Acquisitions 001, LLC v. Ansur Am. Ins. Co.*, 2015 WL 1437689, at *4 (S.D. Fla. 2015); *World Traveling Fools, LLC v. Diamond Aircraft Indus., Inc.*, 2014 WL 4102160, at *5 (S.D. Fla. 2014). This case is no different.[1]

**B.      RESI is not subject to specific jurisdiction in Florida relating to the claims asserted.**

Nor is RESI subject to specific jurisdiction with respect to the claims asserted here. Specific jurisdiction requires an "'affiliation between the forum and the underlying controversy:'" it looks "principally" to "activity or an occurrence that takes place *in the forum State* and is therefore subject to the State's regulation." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) (emphasis added). Thus, for "a State to exercise [specific] jurisdiction consistent with due process, *the defendant's suit-related conduct* must create a substantial connection with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (emphasis added). Critically, "the relationship must *arise out of* contacts that the 'defendant himself' creates with the forum State." *Id*. at 1122 (emphasis added; quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). This is particularly so for intentional torts: because "[a] forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum" (*id*. at 1123), the analysis must turn on "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id*. at 1122.

---

[1]    Although it is no longer critical to the general jurisdiction analysis, it is nonetheless worth noting that RESI has no employees or offices in Florida. *See* Gray Decl. ¶ 6, attached hereto as Exhibit "A".

The relationship between the plaintiff (or other defendants or third-parties) and Florida is irrelevant to assessing whether the Court has specific jurisdiction as to RESI. Because the "[d]ue process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties"—the Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Id*.

Here, the plaintiff fails to allege that RESI's conduct at issue in this case—to the extent that the plaintiff alleges RESI did *anything* (*see*, *infra*, 8-9)—occurred *in Florida*. Specific jurisdiction is thus unavailable. Generously read, the total allegations as to RESI are as follows:

- RESI acquires sub-performing and non-performing residential mortgage loans; it converts some of those assets to rental properties. Compl. ¶¶ 7, 59, 75..
- Altisource agreed to provide RESI with operational services. *Id*. ¶ 60.
- RESI entered into "long-term master service agreements" with Ocwen and Altisource. *Id*. Altisource provides "property management, leasing and construction management services." *Id*. Ocwen provides loan servicing for mortgage loans acquired by a RESI affiliate. *Id*. ¶ 61.

In short, all that RESI is alleged to have done is acquire real estate assets and enter agreements with other entities regarding the management of those assets. The plaintiff does not identify how any of this alleged conduct relates to the claims asserted in this suit; thus, the plaintiff does not assert that RESI has any *suit-related* conduct *anywhere*. In any event, the plaintiff fails to allege that *any* of the conduct by RESI actually related to the claims asserted here occurred in Florida. There are thus no allegations that RESI engaged in an "activity … that [took] place in [Florida] and is therefore subject to [Florida's] regulation." *Goodyear*, 131 S. Ct at 2851.

The plaintiff's allegation, in exceedingly general terms, that RESI has some form of a contractual relationship with Ocwen affiliates, and, further, that Ocwen is incorporated in Florida, does not establish specific jurisdiction. Ocwen, according to the plaintiff, is headquartered in Georgia, not Florida. Compl. ¶ 31. There is no basis to conclude, therefore, that any contract between RESI and Ocwen has anything to do with Florida. The plaintiff, moreover, fails to allege that his claims against RESI "arise out of" this contract. *Walden*, 134 S. Ct. at

1122.

And even if the plaintiff could so allege, it would not satisfy the due process requirements: the Supreme Court has unequivocally held that "an individual's contract with an out-of-state party alone" "clearly" cannot "automatically establish sufficient minimum contacts in the other party's home forum." *Burger King*, 471 U.S. at 478. As the Eleventh Circuit put it, "[t]he existence of a contractual relationship between a nonresident defendant and a Florida resident is not sufficient in itself to meet the requirements of due process." *Jet Charter Serv., Inc. v. Koeck*, 907 F.2d 1110, 1113 (11th Cir. 1990).

Rather, a contract can support the exercise of general jurisdiction in Florida only if (1) the contract "envision[s] continuing and wide-reaching contacts" between RESI *and Florida* (*Burger King*, 471 U.S. at 480), and (2) it is the Florida-based conduct that actually "*caused* foreseeable injuries." *Id.* (emphasis added). Because the plaintiff has not alleged that RESI's contractual relationships envisioned any—much less the necessary "continuing and wide-reaching"—conduct in Florida, or that any of RESI's Florida-based conduct actually *caused* the plaintiff's alleged injuries, specific jurisdiction is unavailable.

## II.    Plaintiff Fails To State Claims For Relief Against RESI.

Separately, assuming all of plaintiff's allegations as true, the Complaint nonetheless should be dismissed for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6).

### A.    The Complaint does not satisfy Rule 8(a).

To begin with, the Complaint fails the requirements of Rule 8(a). At bare minimum, a complaint must provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). In short, the plaintiff must plead *what* he believes the defendant did that could establish liability against it.

A complaint cannot avoid this obligation through group pleading. "In multiparty litigation, … the Federal Rules do not permit a party to aggregate allegations against several defendants in a single, unspecific statement, but instead require the pleader to identify (albeit

generally) the conduct of *each* defendant giving rise to his claims." *Parker v. Brush Wellman, Inc.*, 377 F. Supp. 2d 1290, 1294 (N.D. Ga. 2005). "Rule 8's fair notice requirement is intended to give defendants notice and the opportunity to respond to claims *against them.*" *Petrovic v. Princess Cruise Lines, Ltd.*, 2012 WL 3026368, at *5 (S.D. Fla. 2012) (emphasis added). "[I]t is not for the Court or the parties to 'speculate as to the identity of the Defendants'" that a complaint's "'allegations are levied against,'" because "'the burden of proof rests on the plaintiff[] to provide fair notice of the grounds for the claims made against each of the defendants.'" *Id.* (quoting *VanZandt v. Okla. Dep't of Human Servs.*, 276 F. App'x 843, 849 (10th Cir. 2008)). When "[n]othing in the Complaint links any of the[] facts and circumstances" to a specific defendant, "much less provides any basis for concluding that [plaintiffs] can assert any plausible claims against" that defendant, then the complaint is "woefully inadequate" under Fed. R. Civ. P. 8. *Tuck v. Off Shore Inland Marine & Oilfield Co.*, 2013 WL 81135, at *4 & n.8 (S.D. Ala. 2013).

Consistent with this commonsense principle, courts routinely dismiss claims that "lump[] all the defendants together in each claim and provid[e] no factual basis to distinguish their conduct." *Lane v. Capital Acquisitions & Mgmt.*, 2006 WL 4590705, at *5 (S.D. Fla. 2006); *see also Petrovic*, 2012 WL 3026368, at *5; *Bentley v. Bank of Am.*, 773 F. Supp. 2d 1367, 1373 (S.D. Fla. 2011); *Solomon v. Blue Cross & Blue Shield Ass'n*, 574 F. Supp. 2d 1288, 1293 (S.D. Fla. 2008).

The plaintiff's Complaint fails these requirements. The plaintiff has given no indication as to why he believes RESI is at fault and liable. The plaintiff merely alleges, at a high level of generality, that RESI acquires residential mortgage loans and real estate, and that RESI pays other entities, including Altisource and Ocwen, to service these assets. Compl. ¶¶ 59-61. Then, lumping together four "Aider and Abettor Defendants," the plaintiff nakedly asserts that they all aided and abetted Ocwen and were unjustly enriched. The plaintiff offers no other detail, and identifies no conduct by RESI that he asserts was unlawful. Absent concrete allegations as to what conduct by RESI forms the basis of this suit, RESI cannot meaningfully defend itself. The

Complaint does not provide the fair notice that Rule 8(a) requires.

**B.  The Complaint fails to state a claim for aiding and abetting a breach of fiduciary duty against RESI.**

Nor does the Complaint adequately plead the necessary elements of his asserted claims. To survive a motion to dismiss, the Complaint "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1051 (11th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Where the allegations are merely 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action,' the plaintiff's claim will not survive a motion to dismiss." *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Where "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint must be dismissed. *Id.* at 679.

The plaintiff has not sufficiently pleaded the elements of claim for aiding and abetting a breach of a fiduciary duty. That claim generally requires a plaintiff to prove four elements: (1) that a breach of a fiduciary duty by the primary wrongdoer occurred, (2) that the defendant substantially assisted this breach, (3) that the defendant knew about this breach, and (4) that the defendant's own conduct proximately caused damage to the plaintiff. *See White v. Shamrock Bldg. Sys., Inc.*, 669 S.E.2d 168, 172 (Ga. Ct. App. 2008); *Arbitrajes Financieros, S.A. v. Bank of Am., N.A.*, 2015 WL 1346096, at *3 (11th Cir. 2015).[2]

---

[2]   Plaintiff asserts—without any support—that Florida law governs this claim. Compl. ¶ 276. Because, as discussed at length with respect to jurisdiction, the plaintiff fails to allege that any of RESI's relevant conduct occurred in Florida, that assertion is dubious. Indeed, since the plaintiff alleges that Ocwen is headquartered in Georgia (*id*. ¶ 31), it is possible that Georgia law governs this dispute, as that forum may have the "'most significant relationship to the occurrence and the parties.'" *Connell v. Riggins*, 944 So. 2d 1174, 1176 (Fla. Dist. Ct. App. 2006).

Because the plaintiff fails to allege any facts that would establish *where* RESI's allegedly-unlawful conduct occurred (indeed, the plaintiff fails to allege that RESI engaged in *any* unlawful conduct), there is no basis in the present record to make a choice-of-law determination. But, because plaintiff's allegations as to RESI are so completely devoid of substance, they fail under any applicable legal standard. Choice of law disputes need not be resolved if they do not

### 1.   Plaintiff fails to plead an underlying breach of a fiduciary duty.

Plaintiff's assertion that RESI aided and abetted breaches of fiduciary duty by the individual requires, of course, that the individual defendants in fact breached relevant fiduciary duties. *See White*, 669 S.E.2d at 172; *Arbitrajes Financieros*, 2015 WL 1346096, at \*3. RESI anticipates that individual defendants will contest the extent to which the Complaint properly states causes of action against them. To the extent that the Court dismisses any or all of these claims, that precludes any derivative aiding-and-abetting theory against RESI.

### 2.   Plaintiff fails to plausibly allege that RESI substantially assisted the individual defendants' alleged breaches.

Additionally, the plaintiff fails to allege any basis to conclude that RESI provided substantial assistance to the individual defendants' alleged breaches. The plaintiff alleges, without any further elaboration, that "the Aider and Abettor Defendants provided substantial assistance and encouragement" to the "breaches" by "the Individual Defendants." Compl. ¶ 276. But this is the exact kind of "formulaic recitation of the elements of a cause of action" that "will not do." *Twombly,* 550 U.S. at 555. Where, like here, "[t]he complaint is void of any facts other than conclusory allegations" that a defendant "provided substantial assistance to or encouragement of any wrongdoing by" the principal culprit, aiding and abetting claims fail. *S&B/BIBB Hines PB 3 Joint Venture v. Progress Energy Fla., Inc.*, 365 F. App'x 202, 207 (11th Cir. 2010).

The plaintiff alleges that Ocwen's officers and directors harmed Ocwen by failing to adhere to certain regulatory requirements and then concealing their failures. Compl. ¶ 1. He alleges that the officers and directors failed to properly control Erbey. *Id*. By contrast, the plaintiff alleges that RESI acquired residential real estate mortgages and residential property, and, further, that RESI allegedly contracted with Altisource and Ocwen for property management and mortgage loan services. *Id*. ¶¶ 59-61. Nowhere does the plaintiff identify how he believes RESI substantially assisted Ocwen or the individual defendants' assertedly unlawful

---

bear on the outcome. *See*, *e.g.*, *Graphic Packaging Holding Co. v. Humphrey*, 416 F. App'x 1, 6 n.3 (11th Cir. 2010) ("assum[ing] without deciding" the choice-of-law question).

conduct.

While plaintiff's failure of pleading is a sufficient basis to dismiss the claim, there are at least two additional, independent reasons that the plaintiff cannot plead substantial assistance.

*First*, RESI is not alleged to have engaged in any *affirmative* conduct relating to the individual defendants' asserted misdeeds. This is dispositive: "Substantial assistance occurs when a defendant affirmatively assists, helps conceal, or fails to act when required to do so, thereby enabling the breach to occur." *Groom v. Bank of Am.*, 2012 WL 50250, at *4 (M.D. Fla. 2012) (quotation omitted). Pleading merely "the 'failure to act, absent a duty to act, is not substantial assistance.'" *Id*. The plaintiff's failure to allege that RESI did *anything* that qualifies as an affirmative act bars the aiding and abetting claim.[3] Indeed, the plaintiff's allegations as to RESI—that it acquires and owns loans—is true of *all* of Ocwen's customers.

*Second*, in the context of aiding and abetting a breach of fiduciary duty, the "scienter requirement … varies on a sliding scale from 'recklessness' to 'conscious intent.'" *Ct. Appointed Receiver of Lancer Offshore, Inc. v. Citco Grp. Ltd.*, 2008 WL 926509, at *6 (S.D. Fla. 2008). When a defendant does not owe a "duty to disclose," "an alleged aider-abettor may be found liable only if scienter of the high 'conscious intent' variety can be shown." *Id*.; *see also Living Color Enters., Inc. v. New Era Aquaculture, Ltd.*, 2015 WL 1526177, at *7 (S.D. Fla. 2015) ("To satisfy the substantial assistance element, a plaintiff must allege (1) recklessness and a duty to disclose the breach or (2) conscious intent."). Here, there is no allegation—nor could there be—that RESI owes any kind of duty to disclose. Thus, to allege substantial assistance, the plaintiff must show not only that RESI aided the main defendants, but that it did so with scienter of *consciously intending* to assist the underlying alleged breaches. Plaintiff does not, and cannot, make any such allegation.

---

[3]   Likewise, to the extent that Georgia law applies, Georgia requires a plaintiff to plead and then prove that, "through *improper action or wrongful conduct* and without privilege, the defendant acted *to procure* a breach of the primary wrongdoer's fiduciary duty to the plaintiff." *White*, 669 S.E.2d at 172 (emphases added). There are no allegations that RESI acted wrongfully, nor that it did so "to procure" a breach by the individual defendants.

The plaintiff's allegations—which do nothing more than invoke the words "substantial assistance"—provide no basis whatsoever to establish an aiding and abetting claim against RESI.

### 3.    Plaintiff fails to plausibly allege that RESI had actual knowledge.

The plaintiff fails to offer any allegation that, if true, would establish that RESI actually knew of the alleged breaches of fiduciary duty by Ocwen or the individual defendants. Under any standard for aiding and abetting a breach of a fiduciary duty, a plaintiff must plead and then prove that the defendant had actual knowledge of the underlying breach. *White*, 669 S.E.2d at 172; *Arbitrajes Financieros*, 2015 WL 1346096, at *3 ("actual knowledge" is required); *Perlman v. Wells Fargo Bank, N.A.*, 559 F. App'x 988, 992 (11th Cir. 2014) ("actual knowledge" is "an essential element of the aiding and abetting claims under Florida law"); *Hays v. Paul, Hastings, Janofsky & Walker LLP*, 2006 WL 4448809, at *8 n.6 (N.D. Ga. 2006) ("[A]iding and abetting requires actual knowledge and is not satisfied by reckless or negligent conduct.").

The perfunctory allegations of knowledge come nowhere near satisfying this requirement. The plaintiff alleges "[t]he Aider and Abettor Defendants knew and substantially assisted in the wrongful conduct which resulted in the breaches of the Individual Defendants' respective duties of loyalty to Ocwen." Compl. ¶ 275. But this is the kind of "formulaic recitation of the elements of a cause of action" that is insufficient to establish a claim. *Twombly*, 550 U.S. at 555.

The plaintiff does allege that the aider and abettor defendants generally had "knowledge" of the asserted, unspecified "breaches" "as a result of the control of all of those entities by Defendant Erbey." Compl. ¶ 276. But under the "adverse interest" doctrine, "[w]hen a corporate agent engages in misconduct that is calculated to benefit the agent and to harm the corporation, the agent has effectively ceased to function within the course and scope of the agency relationship with the corporation." *O'Halloran v. PricewaterhouseCoopers LLP*, 969 So. 2d 1039, 1045 (Fla. Dist. Ct. App. 2007). Thus, when a "corporate agent" "'act[s] adversely to the corporation's interests, the knowledge and misconduct of the agent are not imputed to the corporation.'" *Id*. The crux of the plaintiff's allegations, of course, are that Erbey and the other

individual defendants acted adversely to corporate interests in an effort to secure personal gain. *See*, *e.g.*, Compl. ¶¶ 19, 141, 267. Accordingly, Erbey's asserted knowledge cannot be imputed to RESI.

Additionally, the plaintiff's allegations turn on the assertion that the Individual Defendants "concealed" information with respect to Ocwen. *E.g.*, Compl. ¶¶ 1, 43, 237, 241. If, according to the plaintiff, the Individual Defendant's misconduct was continuously concealed, there is no conceivable basis—and certainly not one alleged by the plaintiff—that RESI *actually knew* of the alleged misconduct. *See Arbitrajes Financieros*, 2015 WL 1346096, at *3 (11th Cir. 2015) (dismissing an aiding and abetting claim since defendant could not have known about the alleged breach where the wrongdoer hid its fraud by making false representations).[4]

### 4.   Plaintiff fails to plausibly allege proximate cause.

Finally, the plaintiff offers no basis to conclude that RESI's allegedly "tortious conduct proximately caused damage to the plaintiff." *White*, 669 S.E.2d at 172; *see also Coquina Invs. v. Rothstein*, 2012 WL 4479057, at *19 (S.D. Fla. 2012).

The harm allegedly suffered by the plaintiff—the loss of value in his investment in Ocwen—is in no sense proximately related to any alleged activity by RESI. Plaintiff offers no allegation to the contrary. Absent a concrete, plausible allegation that RESI proximately caused the plaintiff's harm, he cannot state an aiding-and-abetting claim against RESI.

### C.   Plaintiff Fails to State a Claim for Unjust Enrichment Against RESI.

The plaintiff does not state a basis for an unjust enrichment claim against RESI. An unjust enrichment claim requires a plaintiff to plead, and later prove, (1) "a benefit conferred upon a defendant by the plaintiff," (2) "the defendant's appreciation of the benefit," and (3) "the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof." *Cafaro v. Zois*, 2015 WL 3821752, at *19

---

[4]   Georgia law requires, in addition to "knowledge," that the "defendant acted purposely and with malice and the intent to injure." *White*, 669 S.E.2d at 172. Plaintiff does not allege that RESI acted with any such wrongful purpose, malice, or intent.

(S.D. Fla. 2015); *see Clark v. Aaron's, Inc.*, 914 F. Supp. 2d 1301, 1309 (N.D. Ga. 2012) ("[T]he essential elements of the claim are that (1) a benefit has been conferred, (2) compensation has not been given for receipt of the benefit, and (3) the failure to so compensate would be unjust.").

Here, the plaintiff alleges, without elaboration, that "[e]ach of the Aider and Abettor Defendants . . . profited unjustly from business directed to the foregoing entities" (Compl. ¶ 269), and further that "[e]ach of the . . . Aider and Abettor Defendants who have been unjustly enriched by the wrongdoing set forth in this Complaint should be required to account for and repay the Company therefor." (*id*. ¶ 270).

This allegation falls short for multiple reasons. *First*, "[u]njust enrichment requires that the benefit be direct to the litigant." *Kopel v. Kopel*, 117 So. 3d 1147, 1153 (Fla. Dist. Ct. App. 2013). Here, however, the plaintiff fails to allege *what* "benefit" he believes RESI received. Absent a clear allegation that a benefit was provided to RESI, there can be no unjust enrichment.

*Second*, the "benefit" must be provided "*by the plaintiff*." *Cafaro*, 2015 WL 3821752, at *19 (emphasis asdded). Since the plaintiff fails to allege that RESI received *any* benefit, he additionally cannot demonstrate that the benefit came from the *plaintiff*. Nor could he: the plaintiff himself gave RESI no "benefit," and RESI pays fees *to Ocwen*.

*Third*, the plaintiff pleads no facts that, if established, would demonstrate that RESI has *inequitably* retained a benefit. *Cafaro*, 2015 WL 3821752, at *19. RESI is entitled to make contractual arrangements with other parties in the course of acquiring and managing a portfolio of real estate assets. The plaintiff does not allege any basis to conclude that RESI acted unjustly.

*Fourth*, the plaintiff cannot pin an unjust enrichment claim on a contractual relationship. "It is well settled that the law will not imply a contract where an express contract exists concerning the same subject matter." *Cafaro*, 2015 WL 3821752, at *19. Thus, "an unjust enrichment claim is precluded by the existence of an express contract between the parties governing the subject matter in dispute." *Id*.; *see also Degirmenci v. Sapphire-Fort Lauderdale, LLLP*, 693 F. Supp. 2d 1325, 1347 (S.D. Fla. 2010) ("Courts have held that under Florida law, a claim for unjust enrichment, a form of equitable relief, cannot stand if an express contract

15

exists."). Here, the plaintiff asserts that RESI had contractual relationships with Altisource and Ocwen. Compl. ¶¶ 60, 61. Those relationships bar the assertion of an unjust enrichment claim.

### III.   The *In Pari Delicto* Doctrine Bars Plaintiff's Claims Against RESI.

If the plaintiff attempts to rehabilitate his aiding-and-abetting claim by arguing that the "adverse interest" doctrine does not apply (*see*, *supra*, 13), the plaintiff will run head-long into a different basis for dismissal of all his claims against RESI: the *in pari delicto* doctrine.

Under the *in pari delicto doctrine*, "a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing." *Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1152 (11th Cir. 2006). Put differently, a company cannot sue another for aiding and abetting its *own* misconduct. While the doctrine "is an affirmative defense," "dismissal under Rule 12(b)(6) may be proper if the face of the complaint establishes the requirements of the defense." *Peterson v. Winston & Strawn, LLP*, 2012 WL 4892758, at *3 (N.D. Ill. 2012); *see also Edwards*, 437 F.3d at 1157 (affirming *in pari delicto* dismissal).

Because this is a derivative suit, the *in pari delicto* doctrine applies. As the plaintiff alleges, he "brings this action derivatively in the right and for the benefit of Ocwen." Compl. ¶ 199. And "[b]ecause shareholder derivative actions are brought 'to enforce a *corporate* cause of action against officers, directors and third parties,'" plaintiffs "'standing in the shoes of the corporation' have no rights greater than those of the corporation, nor can those they choose to sue be deprived of defenses they could assert against the corporation's claims." *In re Salomon Inc. Shareholders' Derivative Litig.*, 1994 WL 533595, at *4 (S.D.N.Y. 1994) (citation omitted). There is no doubt, therefore, that the *in pari delicto* defense applies to shareholder derivative suits. *See*, *e.g.*, *Kirschner v. KPMG LLP*, 938 N.E.2d 941, 954 (N.Y. 2010); *In re Am. Int'l Grp., Inc., Consol. Derivative Litig.*, 976 A.2d 872 (Del. Ch. 2009).

To be sure, there is an "adverse interest exception" to the *in pari delicto* doctrine. When a corporate agent "was acting adversely to the corporation's interests, the knowledge and misconduct of the agent are not imputed to the corporation." *In re Mirabilis Ventures, Inc.*, 2011 WL 397788, at *3 (M.D. Fla. 2011). That is, "[w]here the misconduct at issue consists … in

16

looting the corporation, the corporation—which is itself purely the victim of the misconduct—may properly invoke the adverse interest exception and defeat an *in pari delicto* defense." *O'Halloran*, 969 So. 2d at 1046.

But this poses a no-win problem for the plaintiff. If, to avoid *in pari delicto*, the plaintiff argues that the adverse interest exception applies, then Erbey's conduct and knowledge is not imputed to the corporate forms. The plaintiff would, therefore, have no plausible way to allege that RESI actually knew of the asserted misconduct at Ocwen. *See*, *supra*, 13-14. By contrast, if the plaintiff argues that the adverse interest exception does *not* apply, then Erbey's wrongful conduct *is* imputed to the corporate forms, meaning that the *in pari delicto* defense bars the plaintiff's claims. Either way, the claims against RESI fail.

## IV.    The Plaintiff Lacks Standing Because He Fails To Allege When He Purchased Ocwen Stock.

The Complaint must be dismissed for yet another reason: the plaintiff fails to allege a necessary requirement of a shareholder derivative suit—the precise *date* on which he purchased Ocwen stock. Federal Rule of Civil Procedure 23.1(b)(1), which the plaintiff acknowledges governs this suit, *see* Compl. at 84, requires a shareholder-derivative plaintiff to "allege that the plaintiff was a shareholder or member at the time of the transaction complained of."[5] Pursuant to this rule, a complaint must "precisely indicate the stock acquisition date." *Sokolowski ex rel. Las Vegas Sands Corp. v. Adelson*, 2014 WL 3748191, at *3 (D. Nev. 2014).

The date the plaintiff purchased his shares is not a mere technicality: "[a] derivative plaintiff has no standing to challenge transactions that occurred prior to the time that plaintiff owned company stock." *In re Accuray, Inc. S'holder Derivative Litig.*, 757 F. Supp. 2d 919, 925 (N.D. Cal. 2010). And a plaintiff may not bring suit if he bought stock *after* learning about the asserted misconduct: to "'prevent courts from being used to litigate purchased grievances,'" "'a stranger to the corporation who buys stock with knowledge of the alleged wrongs may not

---

[5]    The plaintiff cannot attempt to assert his claims individually, rather than derivatively, as he has no basis to allege that his asserted injuries differ from other shareholders. *See Kammona v. Onteco Corp.*, 962 F. Supp. 2d 1299, 1302 (S.D. Fla. 2013).

maintain a derivative action.'" *SC Note Acquisitions, LLC v. Wells Fargo Bank, N.A.*, 934 F. Supp. 2d 516, 529 (E.D.N.Y. 2013), *aff'd,* 548 F. App'x 741 (2d Cir. 2014). Indeed, courts dismiss complaints when derivative plaintiffs purchased stock after the initiation of external investigations that form the basis of their claims. *See In re Bank of New York Derivative Litig.*, 320 F.3d 291, 299 (2d Cir. 2003). The purchase date is thus crucial.

Here, the plaintiff alleges that he "owns and has continuously owned common stock in Ocwen beneficially during the period of the wrongdoing alleged herein." Compl. ¶ 200. He does not assert whether he owned stock during *all* events at issue in this suit; "during" does not mean "during the entirety of." In fact, in *Adelson*, the court rejected this *same* plaintiff's *identical* allegation as insufficient—that plaintiff Sokolowski owned stock "'during the period of the wrongdoing alleged herein.'" *Adelson*, 2014 WL 3748191, at *3.[6]

Scores of other courts agree, holding that nearly identical, generic allegations of ownership fail Rule 26.1(b)'s requirement. Courts thus dismiss actions where a plaintiff merely pleads that he or she owned stock "at all relevant times" (*see, e.g., In re Am. Apparel, Inc. S'holder Derivative Litig.*, 2012 WL 9506072, at *37 (C.D. Cal. 2012); *DiLorenzo v. Norton*, 2009 WL 2381327, at *3 (D.D.C. 2009); *In re Maxim Integrated Prods., Inc.*, 2007 WL

---

[6]   The plaintiff's evidence of his ownership of Ocwen stock shows that he almost certainly did *not* own stock during the entirety of the relevant period that is the focus of his complaint. Plaintiff attached to his complaint a Morgan Stanley account statement, dated January 10, 2014, demonstrating that he purchased 32 shares at a total price of $1,760.64. Compl. Ex. A. The plaintiff, accordingly, appears to have purchased his stock at a price of $55.02 per share. Ocwen stock was trading at around that price in late December 2013 and early January 2014, meaning he may well have bought it contemporaneously with the date of his account statement. In any event, the first time Ocwen stock reached the price of $55.02—thus, the *earliest* that the plaintiff could have purchased it—was in September 2013.

But the complaint turns significantly on an agreement that Ocwen reached in 2012 with New York regulators (Compl. ¶¶ 4, 43, 87-91)—an agreement that almost certainly occurred prior to the plaintiff's purchase of Ocwen stock. It also turns on a December 2013 complaint by, and settlement with, the Consumer Financial Protection Bureau ("CFPB") and 49 states (*id.* ¶¶ 43, 99-103)—which may too have occurred before plaintiff bought his stock. There is thus substantial reason to conclude that the date on which the plaintiff purchased his stock will bar his suit, especially if he purchased it following the CFPB complaint and settlement, as a party may not "litigate [a] purchased grievance[]." *In re Bank of New York Derivative Litig.*, 320 F.3d at 297.

2745805, at *3 (N.D. Cal. 2007)), that he or she owned stock during the "Relevant Period" (*see, e.g.*, *Smith v. Stevens*, 957 F. Supp. 2d 466, 469 (S.D.N.Y. 2013); *In re RINO Int'l Corp. Derivative Litig.*, 2011 WL 5245426, at *2 (D. Nev. 2011); *In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1202 (N.D. Cal. 2007)), or that he or she owned stock "at the time of the continuing wrongs complained of herein" (*see, e.g.*, *In re Accuray*, 757 F. Supp. 2d at 926).

The plaintiff's generic allegation, accordingly, fails to demonstrate that he has standing to assert the derivative claims he presses in this suit.

**V.      Any Stay Of The Action Should Apply To RESI.**

RESI respectfully joins the Motion to Stay filed by certain individual defendants. *See* Dkt. No. 37. Any stay entered against those defendants should plainly apply to RESI: because the principal allegations against RESI are that it aided and abetted the individual defendants, it would make no sense for the litigation to proceed against RESI while it is stayed as to the principal defendants. Indeed, as explained above, to the extent that any claims fail against the individual defendants, that necessarily undermines the aiding and abetting claims asserted against RESI.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Complaint should de dismissed as against RESI and with prejudice for lack of personal jurisdiction and failure to state a claim.

Dated July 16, 2015                  Respectfully submitted,

By:      */s/ Jeffrey B. Crockett*
         Jeffrey B. Crockett, Fla. Bar No. 347401
         COFFEY BURLINGTON, P.L.
         2601 South Bayshore Drive, Penthouse
         Miami, Florida 33133
         Telephone: (305) 858-2900
         Facsimile: (305) 858-5261
         jcrockett@coffeyburlington.com
         vmontejo@coffeyburlington.com
         service@coffeyburlington.com

         Joseph De Simone, *of counsel*
         Matthew D. Ingber, *of counsel*
         Paul W. Hughes, *of counsel*
         Niketa K. Patel, *of counsel*
         MAYER BROWN LLP
         1221 Avenue of the Americas
         New York, New York 10020
         Tel.: (212) 506-2500

         *Counsel for Defendant*
         *Altisource Residential Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by Notice of Electronic Filing generated by CM/ECF, on July 16, 2015, on all counsel or parties of record on the Service List below.

By:    /s/ Jeffrey B. Crockett
Jeffrey B. Crockett, Fla. Bar No. 347401
COFFEY BURLINGTON, P.L.
2601 South Bayshore Drive, Penthouse
Miami, Florida 33133
Telephone: (305) 858-2900
Facsimile: (305) 858-5261
jcrockett@coffeyburlington.com
vmontejo@coffeyburlington.com
service@coffeyburlington.com

Joseph De Simone, *of counsel*
Matthew D. Ingber, *of counsel*
Paul W. Hughes, *of counsel*
Niketa K. Patel, *of counsel*
MAYER BROWN LLP
1221 Avenue of the Americas
New York, New York 10020
Tel.: (212) 506-2500

*Counsel for Defendant*
*Altisource Residential Corporation*

## SERVICE LIST

Richard D. Greenfield
whitehatrdg@earthlink.net
Greenfield & Goodman
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (917) 495-4446
Facsimile: (917) 745-4158


Daniel B. Rehns
drehns@cohenmilstein.com
Cohen Milstein Sellers & Toll, PLLC
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: (202) 838-7797
Facsimile: (212) 838-7745

*Counsel for Plaintiff W.A. Sokolowski*




David P. Ackerman (FBN 374350)
Dana E. Foster (FBN 0185469)
Ackerman, Link & Sartory, P.A.
777 S. Flagler Drive, Suite 800 East
West Palm Beach, Florida 33401
Telephone: (561) 838-4100
Facsimile: (561) 838-5305
dackerman@alslaw.com
dfoster@alslaw.com

*Counsel for Defendant Altisource Asset Management Corporation*

Theodore J. Leopold (FBN 989762)
Cohen Milstein Sellers & Toll PLLC
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Telephone: (561) 515-1400
Facsimile: (561) 515-1401
tleopold@cohenmilstein.com

Steven J. Toll
1100 New York Avenue, NW, Suite 500
Washington, DC 20008
Telephone: (202) 408-4600
Facsimile: (202) 521-0166
stoll@cohenmilstein.com

Richard A. Speirs
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
rspeirs@cohenmilstein.com

*Co-Lead Counsel for Plaintiff W.A. Sokolowski*


Jason M. Moff
jmoff@kramerlevin.com
Kramer Levin Naftalis & Frankel, LLP
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9913
Facsimile: (212) 715-8000

*Counsel for Defendants William C. Erbey, Ronald M. Faris, Ronald J. Korn, William H. Lacy, Barry N. Wish, Robert A. Salcetti, and Ocwen Financial Corporation*

22

John P. Coffey
scoffey@kramerlevin.com
Kramer Levin Naftalis & Frankel, LLP
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9456
Facsimile: (212) 715-8000

*Counsel for Defendants William C. Erbey,*
*Ronald M. Faris, Ronald J. Korn, William*
*H. Lacy, Barry N. Wish, Robert A. Salcetti,*
*and Ocwen Financial Corporation*

Jonathan M. Wagner
jwagner@kramerlevin.com
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9393
Facsimile: (212) 715-8000

*Counsel for Defendants William C. Erbey,*
*Ronald M. Faris, Barry N. Wish, and Ocwen*
*Financial Corporation*

Jeffrey Allan Hirsch
hirschj@gtlaw.com
Greenberg Traurig
401 E. Las Olas Boulevard, Suite 2000
Fort Lauderdale, FL 33301
Telephone: (954) 765-0500
Facsimile: (954) 765-1477

*Counsel for Defendants William C. Erbey, Ronald*
*M. Faris, Ronald J. Korn, William H. Lacy, Barry*
*N. Wish, Robert A. Salcetti, and Ocwen Financial*
*Corporation*

Charles H. Lichtman
clichtman@bergersingerman.com
Berger Singerman
Las Olas Centre II
350 E Las Olas Boulevard, Suite 1000
Fort Lauderdale, FL 33301
Telephone: (954) 525-9900
Facsimile: (964) 523-2872

*Counsel for Defendants Ronald J. Korn, William*
*H. Lacy, Barry N. Wish, Robert A. Salcetti, and*
*Wilbur L. Ross, Jr.*

Edward Soto (FBN 0265114)
Weil, Gotshal & Manges LLP
1395 Brickell Avenue, Suite 1200
Miami, Florida 33131
Telephone: (305) 577-3100
Facsimile: (305) 374-7159
edward.soto@weil.com

Jonathan D. Polkes
Stephen A. Radin
Adam J. Bookman
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
jonathan.polkes@weil.com
stephen.radin@weil.com
adam.bookman@weil.com

*Counsel for Defendant Home*
*Loan Servicing Solutions, Ltd.*

23