UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

**In Re:**

**OCWEN DERIVATIVE ACTION
LITIGATION**

No. 14-81601-CIV-SNOW

**PLAINTIFFS' MEMORANDUM
OF LAW IN SUPPORT OF MOTION FOR
FINAL APPROVAL OF DERIVATIVE
SETTLEMENT**

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT .................................................................................1

II.   NATURE AND STAGE OF THE PROCEEDINGS .........................................................2

      A.    Background ...............................................................................................2

III.  THE PROPOSED SETTLEMENT SHOULD BE APPROVED AS FAIR,
      ADEQUATE, AND REASONABLE.................................................................................8

      A.    The Standard for Final Settlement Approval ...........................................8

            1. The Significant Obstacles to Success at Trial Support Approval of the
            Settlement ............................................................................................... 11

            2. The Range of Reasonableness .......................................................... 14

            3. The Complexity, Expense, and Likely Duration of Continued Litigation Support
            Approval of the Settlement.................................................................. 16

            4. The Reaction of Ocwen Shareholders to Date Supports Approval of the
            Settlement ............................................................................................... 17

            5. The Stage of the Proceedings Supports Approval of the Settlement ................... 18

      B.    The Settlement is the Result of Good Faith, Arm's-Length Negotiations
            Between Experienced and Capable Counsel.........................................19

IV.   CONCLUSION.........................................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aerospace Accessory Service, Inc. v. Abiseid,*
   943 So.2d 866, 867 (2006) ...............................................................13

*In re Amtel Corp. Deriv. Litig,*
   Civ. No. 06-4592, 2010 WL 9525643 (N.D. Cal. March 31, 2010) ........................16

*Bell Atl. Corp. v. Bolger,*
   2 F.3d 1304 (3d Cir. 1993)................................................................15

*Bennett v. Behring Corp.,*
   737 F.2d 982 (11th Cir. 1984) ................................................... *passim*

*Bonner v. City of Prichard,*
   661 F.2d 1206 (11th Cir. 1981) ...........................................................9

*Brehm v. Eisner,*
   746 A. 2d 244 (2000) .....................................................................13

*In re Cendant Corp. Deriv. Action Litig.,*
   232 F. Supp 2d 327 (D.N.J. 2002) ........................................................18

*In re Chicken Antitrust Litig.,*
   560 F. Supp. 957 (N.D. Ga. 1980)....................................................11, 12

*Cohn v. Nelson,*
   375 F. Supp. 2d 844 (E.D. Mo. 2005).....................................................15

*In re Corrugated Container Antitrust Litig.,*
   643 F.2d 195 (5th Cir. 1981) ........................................................15, 19

*Cotton v. Hinton,*
   559 F.2d 1326 (5th Cir. 1977) ..................................................9, 11, 19, 20

*In re Domestic Air Transp. Antitrust Litig.,*
   148 F.R.D. 297 (N.D. Ga. 1993)......................................................12, 20

*Fla. Trailer & Equip. Co. v. Deal,*
   284 F.2d 567 (5th Cir. 1960) ............................................................15

*Francisco v. Numismatic Guar. Corp. of Am.*,
   Civ. No. 06-61677, 2008 WL 649124 (S.D. Fla., Jan. 31, 2008) .....................................19, 20

*Friedman v. Maffei*,
   Civ. No. 11105–VCMR, 2016 WL 1555331 (Del. Ch. April 13, 2016) ...............................13

*Garst v. Franklin Life Ins. Co.*,
   Civ. No. 97-C-0074-S, 1999 U.S. Dist. LEXIS 22666
   (N.D. Ala. June 25, 1999) ...........................................................................................15

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995)...........................................................................................20

*Hutt v. Erbey, et al.*,
   15-cv-81709-WPD ...........................................................................................................3

*Ingram v. Coca-Cola Co.*,
   200 F.R.D. 685 (N.D. Ga. 2001) ...................................................................................10

*Int'l Ins. Co. v. Johns*,
   874 F.2d 1447 (11th Cir.1989) .....................................................................................10

*Levine v. Smith*,
   591 A. 2d 194 (1991).....................................................................................................13

*Lowinger v. Erbey, et al.*,
   15-cv-62628-WPD .......................................................................................................3, 6

*Maher v. Zapata Corp.*,
   714 F. 2d 436 (5th Cir. 1983) .....................................................................10, 11, 15, 18

*Miller v. Republic Nat'l Life Ins. Co.*,
   559 F.2d 426 (5th Cir. 1977) ........................................................................................10

*In re Motorsports Merch. Antitrust Litig.*,
   112 F. Supp. 2d 1329 (N.D. Ga. 2000)....................................................................10, 18

*In re MRV Commc'n Inc. Deriv. Litig.*,
   Civ. No. 08-03800, 2013 WL 2897874 (C.D. Cal. June 6, 2013) ...........................16

*In re Oclaro, Inc. Deriv. Litig.*,
   Civ. No. 11-3176, 2014 WL 4684993 (N.D. Cal. Sept. 19, 2014) ...........................16

*Pettway v. Am .Cast Iron Pipe Co.*,
   576 F.2d 1157 (5th Cir. 1978) .....................................................................................20

*Polk v. Good*,
    507 A.2d 531 (1986) ............................................................................10, 12, 17

*Ressler v. Jaconson*,
    822 F. Supp. 1551 (M.D. Fla. 1992) ...............................................................18

*Ryan v. Gifford*,
    Civ. No. 2213-CC, 2009 WL 18143 (Del. Ch. Jan. 2, 2009).................................10

*Schwartz v. Perseon Corp.*,
    Civ. No. 15–344–LPS, 2016 WL 1238915 (D. Del. Mar. 29, 2016).......................13

*Shlensky v. Dorsey*,
    574 F.2d 131 (3d Cir 1978)............................................................................11

*Sokolowski v. Erbey, et al.*,
    14-cv-81601-WPD.........................................................................................3

*Spiegel v. Buntrock*,
    571 A. 2d 767 (1990).....................................................................................13

Lead Counsel, on behalf of Plaintiffs, William A. Sokolowski ("Sokolowski"), Helene Hutt ("Hutt") and Robert Lowinger ("Lowinger") (collectively "Plaintiffs"), pursuant to Rule 23.1 of the Federal Rules of Civil Procedure, respectfully submit this memorandum of law in support of Plaintiffs' Motion for Final Approval of the proposed settlement of this derivative litigation[1] (the "Settlement"). Lead Counsel will separately be filing a Petition for an Award of Attorneys' Fees and Expenses.[2]

## I.    PRELIMINARY STATEMENT

Currently before this Court is the proposed Settlement of this derivative action involving Ocwen Financial Corporation ("Ocwen" or the "Company"), a Florida corporation. The demand letters, the subsequent derivative litigation and ultimately, the Settlement, resulted in various internal and corporate governance improvements designed to strengthen Ocwen's compliance with state and federal regulations governing the servicing of mortgage loans, selection and independence of Board members, ongoing education of Directors, compliance with accounting standards and internal risk management and controls. The reforms are specifically designed to address, remedy, and prevent the recurrence of the breaches of fiduciary duties and related misconduct alleged in the demand letters and Consolidated Verified Shareholder Derivative Complaint filed March 8, 2016 ("Complaint"). [D.E. 143]; *see also* Joint Decl. at ¶¶ 3-4. Specifically, Ocwen has agreed to adopt and implement the following measures as part of the Settlement:

---

[1] Unless otherwise noted, capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement, dated December 12, 2016 [D.E. 201-1] (the "Settlement" or the "Stipulation").

[2] The accompanying Joint Declaration of Richard A. Speirs and Richard D. Greenfield in Support of Plaintiffs' Motion for Final Approval of Settlement (the "Joint Declaration") is hereby incorporated by reference. Lead Plaintiffs respectfully refer the Court to such Joint Declaration for a detailed description of: the history of the Action; the nature of the claims and the Settlement.

- Revise the process for selecting future Board members;

- Offer its present and future Board members the opportunity to pursue continuing director education and training opportunities;

- Become a member of the National Association of Corporate Directors and thereby facilitate the continuing education and evaluations of its Board.

Stip. at ¶¶ VI.3 (a) - (c).

Ocwen acknowledges that the February 2014 demand letter from Plaintiff Sokolowski was a factor in the decision of the independent members of Ocwen's Board to establish the Special Litigation Committee ("SLC") in May 2014; that the scope and depth of the investigation conducted by the SLC was, in part, guided by the demand letters, that the SLC's outside counsel was assisted by input from Lead Counsel, who met with the Committee; and that Ocwen's steps relating to Board membership and training, described above, are attributable in part to the litigation. *Id.,* ¶ VI.2 (a)-(c). In addition, Ocwen has hired new compliance officers and employees and has continued to enhance compliance functions since receipt of the February 2014 Demand Letter. *Id.*, ¶VI.4. Implementation of these reforms will confer significant benefits upon Ocwen and its shareholders. Because Sokolowski's (and other shareholders' subsequent) demands on Ocwen's Board as well as the commencement and prosecution of this litigation were substantial and material causes in the Company's decision to implement these beneficial corporate changes, on behalf of Plaintiffs, Lead Counsel respectfully requests that the Court approve the Settlement under and pursuant to Rule 23.1.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

### A.    Background

The first of these consolidated derivative actions, *Sokolowski v. Erbey, et al.*, 14-cv-81601-WPD, was commenced on December 24, 2014 on behalf of nominal defendant Ocwen, a

corporation organized under the laws of Florida. Ocwen is a publicly traded corporation and one of the largest mortgage servicing companies in the United States. Thereafter, two related shareholder derivative actions were filed in this Court as follows: *Hutt v. Erbey, et al.*, 15-cv-81709-WPD; and *Lowinger v. Erbey, et al.,* 15-cv-62628-WPD asserting substantially similar claims.[3] By Order entered on January 8, 2016 [D.E. 120], the Court consolidated the three actions for all purposes (collectively "the Consolidated Derivative Litigation"). Thereafter, by Stipulation and Order entered February 17, 2016 [D.E. 142], Plaintiff Sokolowski's counsel was appointed Lead Counsel for the Plaintiffs. The consolidated Complaint was filed on March 8, 2016 [D.E. 143].

The Complaint alleges, *inter alia,* a widespread and pervasive scheme of wrongdoing in violation of applicable federal and state laws and regulations which resulted from Defendants breaches of their fiduciary duties to Ocwen and its shareholders. Specifically, Plaintiffs allege that during the period May 2, 2013 through the date of the filing of the Complaint, the Individual Defendants had exposed Ocwen to substantial harm by concealing from shareholders and the investing public known failures with respect to the Company's compliance with state and federal regulations governing the servicing of mortgage loans, failing to establish adequate internal controls, permitting Ocwen's now former Chairman and Chief Executive Officer ("CEO"), defendant William C. Erbey ("Erbey"), to be involved in a series of improper self-dealing transactions between Ocwen and various related entities in which Erbey had significant ownership interests, and allowing insiders to engage in transactions in Ocwen securities while in

---

[3] At least two other shareholder derivative suits were commenced by other Ocwen shareholders in the Circuit Court of Palm Beach County, Florida, which cases have been stayed or remain inactive. In addition, other Ocwen shareholders have made pre-suit demands upon the Board and, upon information and belief, have not commenced litigation. SLC Report at 32 & nn.88-89.

possession of material adverse information.[4] Further, notwithstanding both government regulations and multiple regulatory decrees requiring Ocwen's compliance with servicing guidelines, the Board ignored multiple "red flags" with respect to Ocwen's non-compliance and permitted Ocwen's continued violations of state and federal law. *See, e.g.,* Complaint at ¶¶ 2, 123, 195.

Plaintiffs further allege that Defendant Erbey was, simultaneously, the largest or at least a substantial shareholder of four other related companies that were spun off from Ocwen and with whom Ocwen transacted substantial business, including Altisource Portfolio Solutions, S.A., Altisource Residential Corporation ("RESI"), Altisource Asset Management Corporation and Home Loan Servicing Solution (the "Related-Party Transaction Defendants"). *Id.* at ¶¶ 1, 41- 90. The Complaint alleges that Ocwen participated in improper related-party transactions with these entities which are named as Defendants for their role in aiding and abetting the Individual Defendants' breaches of fiduciary duty and their unjust enrichment in connection with the alleged wrongdoing. Additionally, the Complaint alleges that various Ross Fund Defendants[5], who had access to inside information concerning Ocwen because their deputy and managing member, Defendant Ross, at or about the time that he was serving as a Director of Ocwen, sold shares of Ocwen stock at fraudulently inflated prices for proceeds in excess of $200 million while in possession of material inside information not disclosed to Ocwen's shareholders or the investing public generally, and at a point in time when the Company's financial statements were not in compliance with Generally Accepted Accounting Principles. Notably, the Complaint

---

[4] The Complaint alleges that Defendants Erbey, Wish and Ross sold their personal holdings of Ocwen stock on the open market while having knowledge of material, adverse inside information in violation of state and federal law and in breach of their fiduciary duties to the Company. *Id.* at ¶¶ 188, 423-430.

[5] The Ross Fund Defendants are identified in paragraphs 27-37 of the Complaint.

alleges that the Ross Fund Defendants sold over $72 million of Ocwen stock to the Company in July 2014 and just two weeks later, on July 31, 2014, Ocwen publicly disclosed disappointing operating results for the quarter ended June 30, 2014, which resulted in a significant decline in the price of the Company's stock. Further, on August 12, 2014, Ocwen announced that it had to restate its earnings because of accounting irregularities. The Complaint alleges that Defendant Ross possessed material inside information and, as a result, the Ross Fund Defendants profited at the Company's expense and were unjustly enriched. *Id.* ¶¶ 351- 357, 391.

### B.   Relevant Procedural History

#### 1.   The Derivative Actions and Formation of the Special Litigation Committee

To avoid repetition, the lengthy procedural history of this Action is described more fully in the Joint Declaration which is incorporated herein.[6]

#### 2.   The SLC Investigation and Recommendation

The Committee's process, analysis and findings were set forth in a 209-page report. As described in the Report, During its many months of active investigation, the Committee (i) conducted 31 interviews of 24 witnesses—including Mr. Erbey, Mr. Faris, three Board directors, the former and current chief risk officer and chief compliance officer, as well as the chief accounting officer, chief servicing officer, and chief investment officer, among others; (ii) collected and reviewed more than 500,000 pages of documents, including documents produced to the SEC and other regulators, as well as Board and committee minutes, contracts, public Company filings, and the emails of Messrs. Erbey, Faris and other employees; (iii) held 24 formal meetings; (iv) consulted frequently with Carlton Fields; (v) communicated, through

---

[6] In addition, the circumstances surrounding the creation of the SLC and its investigation and deliberations are also set forth in the Joint Declaration and will not be repeated here. *See* Joint Decl. at ¶¶ 8-13.

Carlton Fields, with the Company's litigation counsel; and (vi) communicated and met with counsel for the demanding shareholders. Joint Decl. at ¶ 29. The decision by the SLC placed even greater obstacles in front of Plaintiffs with respect to overcoming the legal standards applicable to derivative actions under Florida law, particularly the presumed deference to the Committee's so-called "business judgment."

### 3.   Settlement Negotiations

After vigorous pursuit of shareholders' claims following the submission of Plaintiffs' demand letters, filing of various complaints, consolidation of various actions and briefing of numerous motions, including motions to dismiss, in May 2016, the Parties began to explore a possible resolution of the litigation. In connection with that effort, Ocwen produced to Lead Counsel, *inter alia,* the Report of the SLC, more than 650,000 pages of documents provided to the SLC.

Significant progress was made in discussions regarding settlement, but by late August, 2016, the Parties had reached an impasse. A final, additional extension of time to respond to the pending motions to dismiss was obtained [D.E. 179] and settlement negotiations continued. Additional time also enabled Lead Counsel to complete their review of the documents produced by Ocwen.

Finally, at the Parties suggestion, the Court ordered a settlement conference before Magistrate Judge Snow, which took place on October 13, 2016. With the assistance of Magistrate Snow an agreement in principle was reached. Thereafter, the Parties formulated and executed a Term Sheet outlining the essential terms of the proposed settlement which was submitted to Magistrate Judge Snow.

C.      The Settlement

Following extensive settlement negotiations, and in recognition of the fact that the removal of Defendant Erbey as Chairman and CEO of Ocwen,[7] and other changes implemented at Ocwen obviated certain related party transactions and conflict of interest issues which were at the center of some of the most material of the substantive claims, as well as other management changes and structural reforms implemented by Ocwen, many of which came after the initial demand letter was sent, the Parties have agreed to a settlement that acknowledges the benefits to Ocwen that Plaintiffs' activities have already yielded as well as the fewer risks faced by Ocwen going forward. These significant corporate therapeutic measures have been and are primarily directed to the Ocwen Board and require the adoption, implementation, and maintenance of certain corporate governance reforms, including measures that Plaintiffs believe addressed and will continue to address the principal underlying issues in the litigation.

Together with these measures, the Settlement provides for the release, with prejudice, of all claims against all Defendants relating to and arising out of the allegations of wrongdoing in the Complaint and the underlying demand letters.

Lastly, Ocwen has agreed to pay Lead Counsel, on behalf of all Plaintiffs' counsel, an amount not to exceed $2,200,000, inclusive of attorneys' fees and expenses incurred in connection with the benefits conferred by this litigation, subject to Court approval. This amount was negotiated at the court-ordered settlement conference presided over by Magistrate Judge

---

[7] Pursuant to a December 2014 Consent Order with the New York Department of Financial Services, a monitor was appointed for two-plus years and Ocwen agreed to institute various governance reforms, as well as accept the resignation of Mr. Erbey as Executive Chairman effective January 15, 2015. Many of the corporate governance reforms coincided with the reforms demanded by Plaintiffs much earlier in their demand letters. Further, on January 15, 2015, pursuant to the Consent Order, two new independent directors satisfactory to the DFS – Phyllis Caldwell and Deforest Blake Soaries, Jr.—were appointed to the Ocwen Board. *See* Stip. at ¶¶ E. & G.

Snow on October 13, 2016, and was reached only after all other material terms of the Settlement were resolved.

On November 30, 2016, the Court preliminarily approved the Settlement.[8] As set forth in the preliminary approval order [D.E. 199 at ¶¶ 9-10], notice was provided to shareholders by the deadline of December 14, 2016. On December 13, 2016, Lead Counsel posted copies of the Complaint, the Notice and the Stipulation on the website of Cohen Milstein Sellers & Toll PLLC. Joint Decl., at ¶ 42. Likewise, counsel for Ocwen has also complied with notice requirements in said order at ¶ 9, as set forth in their Notice of Publication of Summary Notice, which details the publication of notice in the *Investor's Business Daily* as well as *The Palm Beach Post*. [D.E. 203]. The Notice was also posted on December 13, 2016, to the investor relations section of the Company's website in accordance with the preliminary approval order. *Id.* To date, there has been no objection to the Settlement.[9]

The Settlement is conditioned on, among other things, entry of the Final Order and Judgment in this Action approving the Settlement. Stip.. at ¶ V.

## III.   THE PROPOSED SETTLEMENT SHOULD BE APPROVED AS FAIR, ADEQUATE, AND REASONABLE

### A.   The Standard for Final Settlement Approval

Federal Rule of Civil Procedure 23.1 provides that a derivative action may be "settled . . . only with the court's approval." The standard for determining whether final approval is warranted is whether the proposed settlement is fair, adequate, and reasonable and is not the

---

[8] In doing so, the Court granted preliminary approval of the proposed Stipulation that had been filed. [D.E. 197-2].

[9] The deadline to object to the Settlement or any request for attorneys' fees and reimbursement of litigation expenses is January 4, 2016. Should any objection be received by Lead Counsel, Lead Counsel will file a response to such objection for the Court's consideration prior to the Final Settlement Hearing. *See* D.E. 201-2 at Section IX.

product of collusion between the parties.[10] *Bennett v. Behring Corp.*, 737 F.2d 982 (11th Cir.

1984); *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).[11]   In determining the fairness and

adequacy of a proposed settlement, courts should consider the following factors:

> (1) the likelihood of success at trial; (2) the range of possible
> recovery; (3) the point on or below the range of possible recovery
> at which a settlement is fair, adequate and reasonable; and (4) the
> complexity, expense and duration of litigation; (5) the substance
> and amount of opposition to the settlement; and (6) the stage of
> proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986; *see also Ryan v. Gifford*, Civ. No. 2213-CC, 2009 WL 18143, at *5

(Del. Ch. Jan. 2, 2009) ("In reviewing the settlement of a derivative suit, the Court must

determine . . . whether the settlement terms are fair, reasonable, and adequate.").[12]

Courts should also be guided by the "strong judicial policy favoring settlement as well as

by the realization that compromise is the essence of settlement." *Bennett*, 737 F.2d at 986.

Federal courts have long expressed a preference for settlements because they are a "means of

amicably resolving doubts and preventing lawsuits," *Miller v. Republic Nat'l Life Ins. Co.*, 559

F.2d 426, 428 (5th Cir. 1977), and because they conserve "judicial resources by avoiding the

expense of a complicated and protracted litigation process," *In re Motorsports Merch. Antitrust

Litig.*, 112 F. Supp. 2d 1329, 1333 (N.D. Ga. 2000). "Settlements of shareholder derivative

---

[10] "The role of the court and the criteria to be considered in evaluating the adequacy and fairness of a derivative settlement are substantially the same as in a class action." 7 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 22.110, at 476 (4th ed. 2002).

[11] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1211 n.8 (11th Cir. 1981) the Eleventh Circuit adopted as precedent all decisions of Unit B of the former Fifth Circuit.

[12] The *Bennett* factors are substantially similar to the factors used by Delaware Courts when determining the fairness and adequacy of a proposed derivative settlement. *See Polk v. Good*, 507 A.2d 531, 536 (1986) (listing factors). Moreover, courts "rely with confidence upon Delaware law to construe Florida corporate law." *Int'l Ins. Co. v. Johns*, 874 F.2d 1447, 1459 n. 22 (11th Cir.1989).

9

actions are particularly favored because such litigation is 'notoriously difficult and unpredictable.'" *Maher v. Zapata Corp.*, 714 F. 2d 436, 455 (5th Cir. 1983) (citation omitted).

Determining the fairness of a settlement is left to the sound discretion of the trial court, and will not be overturned absent a clear showing of abuse of that discretion. *Maher*, 714 F.2d at 455. Additionally, a trial court is "'entitled to rely upon the judgment of experienced counsel for the parties' in evaluating settlement." *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 689 (N.D. Ga. 2001) (citation omitted). Indeed, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Cotton*, 559 F.2d at 1330. In reviewing the settlement, "the [C]ourt should weigh the relative advantages and disadvantages of the agreement and analyze the relevant facts and law with an eye towards the terms of the settlement, but without reaching ultimate conclusions on the issues underlying the dispute or substituting its business judgment for that of the parties." *In re Chicken Antitrust Litig.*, 560 F. Supp. 957, 960 (N.D. Ga. 1980). The Court should not make the proponent of a proposed settlement "justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." *Cotton*, 559 F.2d at 1330 (citation omitted) (internal quotation marks omitted).

In the context of derivative settlements, the "principal factor to be considered in determining the fairness of a settlement … is the extent of the benefit to be derived from the proposed settlement by the corporation." *Shlensky v. Dorsey*, 574 F.2d 131, 147 (3d Cir 1978). As the Court in *Maher* explained "the effects of the suit on the functioning of the corporation may have a substantially greater economic impact on it, both long- and short-term, than the dollar amount of any likely judgment in its favor in the particular action." 714 F.2d at 461.

10

Here, when examined under the foregoing criteria, it is evident that the proposed Settlement is an excellent result for Ocwen and its shareholders and that it is fair, adequate, and reasonable. The Settlement was a product of extensive arm's-length negotiations between counsel for both parties and it achieved beneficial corporate governance reforms designed to assist Ocwen's Board in developing guidelines for selecting and training Board members and preventing the misconduct alleged in the Complaint from reoccurring. Once implemented, the reforms will provide substantial benefits to the Company and its shareholders. Given the significant additional effort, delays, and uncertainty that would arise if the Parties were to proceed through discovery and motion practice to a trial on the merits, the potential and substantial risks of continued litigation, the significant costs to the Company, as well as the inevitable post-trial motions and appeals that would follow, Plaintiffs submit that the proposed Settlement is in the best interests of the Parties and should be approved by the Court.

### 1.   The Significant Obstacles to Success at Trial Support Approval of the Settlement

As Lead Counsel did, in assessing the fairness, reasonableness, and adequacy of the Settlement, the Court should consider the likelihood of Plaintiffs' surviving the pending motions to dismiss and then prevailing on the merits at trial, and should balance the risk of continuing litigation against the immediate and certain outcome provided for by settlement. *See, e.g.*, *In re Chicken*, 560 F. Supp. at 960. However, the Court "has neither the duty nor the right to reach any ultimate conclusions on the issues of fact or law which underlie the merits of the dispute." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 315 (N.D. Ga. 1993); *Polk v. Good*, 507 A.2d 531, 536 (1986) ("In examining a settlement, the Chancellor need not try the case. Indeed, he is not required to decide any of the issues on the merits.").

Here, although Plaintiffs believe that their claims were and are meritorious, they also recognize that they would have had to overcome significant obstacles to achieve a recovery for Ocwen if the litigation continued beyond the motion to dismiss stage, with the distinct possibility that, any judgment—even if Plaintiffs prevailed—might well have provided for less of a corporate benefit than that achieved under the Settlement. Moreover, Lead Counsel are not unmindful of what they believe to be Ocwen's relatively difficult financial and operational condition, including substantial exposure to potential negative judgments in presently pending class actions.

Among the legal obstacles facing Plaintiffs was the threshold requirement to plead that Plaintiffs' demands on the Ocwen Board were wrongfully rejected. This is no easy task, as establishing wrongful refusal can be extremely difficult. *See, e.g., Schwartz v. Perseon Corp.*, Civ. No. 15–344–LPS, 2016 WL 1238915, at *9 (D. Del. Mar. 29, 2016)("Once a plaintiff makes a demand on a board, and the directors exercise their business judgment to conclude that proceeding with the proposed lawsuit is not in the company's interest, it is usually very difficult for the case to proceed." *See also Spiegel v. Buntrock*, 571 A. 2d 767, 774 (1990) ("[W]here a demand on the board has been made and refused, [courts] apply the business judgment rule in reviewing the board's refusal."). The business judgment review standard creates "a limited presumption of correctness in corporate directors' decisions." *Aerospace Accessory Service, Inc. v. Abiseid*, 943 So.2d 866, 867 (2006). Indeed, it is a "presumption that in making a business decision, the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Buntrock*, 571 A. 2d at 774 (citations omitted). A stockholder challenging a Board's refusal of a demand must rebut that presumption by pleading particularized facts creating a reason to doubt the good faith or

12

reasonableness of the Board's investigation. *See* F. R. Civ. P. 23.1; *Levine v. Smith*, 591 A. 2d 194, 212-13 (1991); overruled in part on other grounds, *Brehm v. Eisner*, 746 A. 2d 244 (2000). *See also Friedman v. Maffei*, Civ. No. 11105–VCMR, 2016 WL 1555331, at *8 (Del. Ch. April 13, 2016).

In this case, although Plaintiffs allege major infirmities in the establishment and conduct of the SLC's investigation of the demands, Lead Counsel recognizes that Ocwen and its Board may nevertheless prevail. Notwithstanding allegations that the SLC process was tainted at the outset, the Board replaced compromised members of the SLC with new independent members who had no previous involvement in the alleged wrongdoing. While the substance of the SLC's investigation and the substance of its conclusions as expressed in its Report are subject to challenge by Plaintiffs, they recognize that given the extensive evidentiary record made by the SLC's counsel prevailing on such a challenge is hardly certain.

Further, Defendants have denied and continue to deny all allegations of wrongdoing contained in the Complaint, as well as any liability, as confirmed in the SLC Report. Instead, Defendants continue to maintain that they acted in good faith and in a manner they reasonably believed to be in the best interests of Ocwen and its shareholders. Even if Plaintiffs prevailed in their opposition to the pending motions to dismiss,[13] as they believe they would, Defendants would vigorously pursue their "good faith" position and the SLC's conclusion that there was not sufficient evidence to support the allegations. Additionally, application of the business judgment rule to the SLC's investigation and conclusion under Florida law, creates a formidable hurdle to proving liability. Recovering any damages awarded would present additional risks, making the

---

[13] Plaintiffs also face numerous motions to dismiss from the defendants against whom Plaintiffs have allege aiding and abetting claims, including challenges to personal jurisdiction which must be overcome. *See* Joint Dec. at ¶¶ 19-21, 32.

likelihood of success highly uncertain, especially should the fortunes of the Defendants with potential liability deteriorate further.

Thus, given the difficulties and uncertainty present in every remaining stage of the litigation—from meeting the requisite pleading requirements in the context of the pending motions to dismiss, to a liability determination, to the calculation and ultimate recovery of damages—the certain benefits achieved by the Settlement is an excellent result and weighs heavily in favor of the Settlement's approval.

### 2.      The Range of Reasonableness

"The second and third factors in the Eleventh Circuit's *Bennett* analysis call for the Court to determine the 'possible range of recovery' and then ascertain where within that range 'fair, adequate, and reasonable settlements lie.'" *Garst v. Franklin Life Ins. Co.*, Civ. No. 97-C-0074-S, 1999 U.S. Dist. LEXIS 22666, at *64 (N.D. Ala. June 25, 1999) (citation omitted). Determination of a "reasonable" settlement, however, does not mean "establishing success or failure to a certainty." *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 212 (5th Cir. 1981); *Fla. Trailer & Equip. Co. v. Deal*, 284 F.2d 567, 571 (5th Cir. 1960).

In the context of a derivative settlement, the "range of possibly recovery" differs from that of a class action. As the Court in *Maher* explained:

> [W]here, as here, the derivative suit is largely an attack on past corporate management practices, as well as on . . . present officers and directors, the dollar amount of a possible judgment, which is essentially the sole goal in the class action damage suit, is not the sole, and may well not be the most important, matter to be considered, for the effects of the suit on the functioning of the corporation may have a substantially greater economic impact on it, both long- and short-term, than the dollar amount of any likely judgment in its favor in the particular action. … The evaluation of such an economic impact is necessarily judgmental and imprecise and normally does not lend itself to meaningful quantification.

714 F.2d at 461; *see also Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1311 (3d Cir. 1993) ("Despite the difficulties they pose to measurement, nonpecuniary benefits to the corporation may support a settlement."); *Cohn v. Nelson*, 375 F. Supp. 2d 844, 853 (E.D. Mo. 2005) ("Courts have recognized that corporate governance reforms such as those achieved here provide valuable benefits to public companies.").

The Settlement is well within the range of reasonableness, particularly when compared to the risks of continued litigation. The Settlement acknowledges important benefits to Ocwen in the wake of Mr. Sokolowski's and other shareholder demands upon the Board and also requires the adoption and implementation of corporate governance reforms that will provide significant benefits to Ocwen and its shareholders, strengthen the Company's internal controls, and prevent the recurrence of the misconduct alleged in the Complaint. Joint Decl. at ¶ 4. Derivative settlements achieving results involving a variety of improvements to corporate governance have regularly been approved by the courts. *See, e.g.*, *In re Oclaro, Inc. Deriv. Litig.*, Civ. No. 11-3176, 2014 WL 4684993, at *2 (N.D. Cal. Sept. 19, 2014) (approving settlement requiring changes to appointment process involving independent director); *In re MRV Commc'n Inc. Deriv. Litig.*, Civ. No. 08-03800, 2013 WL 2897874 (C.D. Cal. June 6, 2013) (settlement requiring change to appointment process of independent director position, as well as officer related to audit processes); *In re Amtel Corp. Deriv. Litig*, Civ. No. 06-4592, 2010 WL 9525643 (N.D. Cal. March 31, 2010) (approval of settlement requiring change in process of independent director appointments).

The Settlement is also reasonable in light of the substantial difficulties that Plaintiffs would face if this litigation were to continue. The Settlement provides Ocwen with the certainty

of additional corporate governance reforms and eliminates the risks associated with continued litigation, including the risk of no recovery for Ocwen or its shareholders.

### 3. The Complexity, Expense, and Likely Duration of Continued Litigation Support Approval of the Settlement

The Court should also consider the complexity, expense, and likely duration of continued litigation when determining whether a settlement is fair, adequate, and reasonable. *Bennett*, 737 F.2d at 986; *Polk*, 507 A.2d at 536. Here, this litigation is unusually complex, as it involves complicated issues associated with derivative actions generally, as well as difficult factual allegations related to conflicts of interest among an array of inter-related entities, third-party defendants and individuals, internal controls and compliance with federal and state financial regulations, financial reporting and accounting matters, insider trading, corporate waste, and misrepresentations in public filings. A trial would require testimony from numerous expert witnesses.

Further, continued litigation would be extremely protracted and would require the expenditure of significant additional resources for the Parties including, but not limited to, completing briefing on eight pending motions to dismiss, lengthy and voluminous document discovery, deposition preparation and the taking of numerous depositions, trial preparation and trial, expert discovery, and potential appeals. In addition, Ocwen may be required to indemnify the other Defendants for their counsel fees. A trial would likely last at least several weeks, and given the complexity of the issues, would require the introduction of hundreds of exhibits. The outcome of a trial would be uncertain, and Plaintiffs would run the risk of achieving no recovery for Ocwen at great cost. Finally, any final trial judgment would be subject to post-trial motions and possible appeals, potentially requiring several more years of litigation.

Thus, if the Action were tried to conclusion rather than settled, there is a real risk of Plaintiffs obtaining little recovery, or even no recovery at all. Given the inherent complexity of derivative actions, and the recovery achieved by Settlement, the Settlement warrants approval. *Maher*, 714 F. 2d at 455 (noting the difficulty and unpredictability of derivative actions).

### 4. The Reaction of Ocwen Shareholders to Date Supports Approval of the Settlement

The reaction of shareholders to a proposed settlement is a significant factor to be considered and absence of substantial objections is "excellent evidence of the settlement's fairness and adequacy." *Ressler v. Jaconson*, 822 F. Supp. 1551, 1556 (M.D. Fla. 1992); *see also In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d 1329, 1338 (N.D. Ga. 2000) ("[T]he lack of objections is a further factor weighing in favor of approval of the settlement[].); *In re Cendant Corp. Deriv. Action Litig.*, 232 F. Supp 2d 327, 333 (D.N.J. 2002) ("Given that no formal objection was filed to the settlement itself, there is little doubt that this factor weighs in favor of approval.").

Here, the Court approved the form and manner of Notice in its Order Preliminarily Approving the Settlement. Notice was provided to shareholders on by the deadline of December 14, 2016 set by the Court and in the manner required by the Order. Joint Decl. at ¶ 42. The Notice informed shareholders of their rights under the Settlement and their right to object. The deadline for submitting objections is January 4, 2017. To date, no objection to the Settlement has been received. [14]

---

[14] This brief and the fee petition of Lead Counsel are being filed in advance of the January 4, 2017 objection deadline to permit Ocwen shareholders to have ample time within which to evaluate Plaintiffs' justification for the proposed settlement and their request for fees and reimbursement of expenses.

### 5. The Stage of the Proceedings Supports Approval of the Settlement

In evaluating a proposed settlement, a Court should also consider the "stage of proceedings at which the settlement was achieved." *Bennett*, 737 F.2d at 986. Here, settlement was reached only after Lead Plaintiff filed a detailed Complaint based on its comprehensive investigation of the allegations alleged therein, after multiple rounds of briefing on various matters, after the production of numerous documents related to the investigation conducted by the SLC, and after the Parties engaged in lengthy settlement negotiations, assisted by a court-ordered mediation session.[15] Settlement at this stage in the litigation will foreclose the substantial expense and expenditure of resources associated with continued litigation, discovery, and trial preparation, as well as the burden imposed on the Court by complex and protracted litigation.

In weighing this factor, the Court should focus on whether "[c]ounsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation," and not the extent to which formal discovery has advanced. *Francisco v. Numismatic Guar. Corp. of Am.*, Civ. No. 06-61677, 2008 WL 649124, at *11 (S.D. Fla., Jan. 31, 2008). Indeed, "formal discovery [is not] a necessary ticket to the bargaining table." *In re Corrugated Container*, 643 F.2d at 211; *see also Cotton*, 559 F.2d at 1332 (the fact that "very little formal discovery was conducted" is not a bar to settlement). Here, the Parties are represented by competent counsel who have thoroughly reviewed the strengths and weakness of their respective positions, have reviewed thousands of highly relevant documents produced by Defendants and,

---

[15] In confirming the benefits of the proposed Settlement, Lead Counsel have also had the benefit of in-person interviews of two members of Ocwen's Board, Ronald Korn, who has been on the Board for many years and was a member of the SLC and Alan Bowers, a more recent Board Member, who became chair of th SLC and is now Chair of the Board's Audit Committee. Such interviews were wide-ranging and touched upon*, inter alia,* the substantive merits of Plaintiffs' claims, the benefits of the proposed Settlement and the formation of, and investigation by, the SLC.

therefore, had "sufficient information" to find that settlement of this Action was preferable to the cost and expense that would be required by additional litigation. *Francisco*, 2008 WL 649124 at *11.

### B.   The Settlement is the Result of Good Faith, Arm's-Length Negotiations Between Experienced and Capable Counsel

A settlement is presumptively fair, where, as here, the Parties, through capable counsel, have engaged in arm's-length negotiations. *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995). The judgment of experienced counsel for the parties is particularly informative to the trial court's review of the proposed settlement. *Cotton*, 559 F.2d at 1330; *In re Domestic Air*, 148 F.R.D. at 313. If experienced counsel determines that a settlement is in the best interests of the parties, "the attorney's views must be accorded great weight." *Pettway v. Am .Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978).

Here, counsel for the parties are highly experienced in complex shareholder derivative actions and are well informed about the strengths and weaknesses of their respective positions. Plaintiffs are principally represented by their Lead Counsel, Cohen Milstein and Greenfield & Goodman LLC. Both firms are recognized for their preeminence in shareholder and complex litigation. *See* Joint Dec. at Exs. A-B. Defendants' counsel are likewise highly experienced in representing clients in shareholder and complex litigation. Thus, the agreement of experienced counsel for the parties that the Settlement is fair and reasonable strongly supports approval of it.

Furthermore, Lead Counsel carefully evaluated the facts of this case and the legal principles applicable to it and determined that there was a serious question as to whether a more favorable result could be achieved through further litigation, including trial. In reaching this conclusion, Lead Counsel (1) reviewed Ocwen's press releases, public statements, SEC filings, and securities analysts' reports and advisories about the Company; (2) reviewed media reports

regarding the Company; (3) researched the applicable law with respect to the claims alleged in the actions and the potential defenses thereto; (4) reviewed and analyzed relevant documents produced by the Defendants; and (5) conducted interviews of two members of the SLC. As a result of this investigation and research, Lead Counsel believe that the corporate governance reforms achieved by the proposed Settlement will confer (and have already conferred) substantial benefits upon Ocwen and its shareholders. Given the difficulties faced by Plaintiffs, and the uncertainty inherent in litigation such as this, the Settlement is an excellent result. Accordingly, the Settlement should be approved by the Court.

## IV.    CONCLUSION

For the reasons set forth above, Lead Counsel, on behalf of all Plaintiffs, respectfully submit that the proposed Settlement is fair, reasonable, and adequate and should be approved by the Court.

Dated: December 29, 2016                    Respectfully submitted,

**COHEN MILSTEIN SELLERS & TOLL PLLC**

BY: /s/ *Theodore J. Leopold*
       Theodore J. Leopold
       2925 PGA Boulevard Suite 200
       Palm Beach Gardens, FL 33410
       Telephone: 561- 515-1400
       tleopold@cohenmilstein.com

       Steven J. Toll
       1100 New York Avenue NW, Suite 500
       Washington, DC 20008
       Telephone: 202-408-4600
       stoll@cohenmilstein.com

       Richard A. Speirs
       (admitted *pro hac vice*)

88 Pine Street 14th Floor
New York, NY 10005
Telephone: 212-838-7797
rspeirs@cohenmilstein.com

**GREENFIELD & GOODMAN, LLC**
Richard D. Greenfield
(admitted *pro hac vice*)
Marguerite R. Goodman
Ann M. Caldwell
Ilene F. Brookler
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: 917-495-4446
whitehatrdg@earthlink.net

*Co-Lead Counsel for Plaintiffs*