UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

**In Re:**

**OCWEN DERIVATIVE ACTION LITIGATION**

No. 14-81601-CIV-SNOW

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

## TABLE OF CONTENTS

I.         INTRODUCTION ................................................................................................ 1

   A.   The Award of Attorneys' Fees is Supported by the Application
        of the *Johnson* Factors .......................................................................... 4

        1.   The Time and Labor Required ............................................................ 5

        2.   The Novelty and Difficulty of the Questions Involved ........................ 10

        3.   The Skill Required to Perform the Legal Service
             Properly ........................................................................................... 11

        4.   The Amount Involved and the Results Obtained ................................. 11

        5.   The Skill, Experience, and Reputation of Counsel ............................ 13

        6.   The Contingent Nature of the Fee .................................................... 14

II.        CONCLUSION ................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Apgar & Markham Const. of Florida, Inc. v. Apgar,*
   684 S.2d 284, 285 (Fla. 3rd DCA 1996)................................................................5

*Boeing Co. v. Van Gemert,*
   444 U.S. 472 (1980)................................................................................................2

*In re Caremark Intern. Inc. Derivative Litig.,*
   698 A.2d 959 (Del. Ch. 1996)..............................................................................12

*In re Catfish Antitrust Litig.,*
   939 F. Supp. 493 (N.D. Miss. 1996).......................................................................5

*In re Chemed Corp. Shareholder Derivative Litig.,*
   11 F. Supp. 3d 1335 (US MDL) (2014).................................................................13

*Florida Patient's Compensation Fund v. Rowe,*
   472 So.2d 1145 (Fla. 1985)..............................................................................18, 19

*Fort Pierce Corp. v. Ivey,*
   671 So.2d 206 (Fla. 4th DCA 1996)........................................................................6

*Ginsberg v. Keehn,*
   550 So. 2d 1145 (Fla. 3rd DCA 1989)....................................................................3

*Hensley v. Eckerhart,*
   461 U.S. 424 (1983)................................................................................................4

*In re Infinity Broad. Corp. S'holders Litig.,*
   802 A.2d 285 (Del. 2002) ........................................................................................5

*Ingram v. The Coca-Cola Co.,*
   200 F.R.D. 685 (N.D. Ga. 2001)..............................................................................4

*Int'l Ins. Co. v. Johns,*
   874 F.2d 1447 (11th Cir.1989) ................................................................................5

*Johnson v. Georgia Highway Express Inc.,*
   488 F.2d 714 (5th Cir. 1974) ..........................................................................*passim*

*Lane v. Head,*
   566 So.2d 508 (Fla. 1990)...........................................................................3, 6, 19

*Maher v. Zapata Corp.,*
   714 F.2d 436 (5th Cir. 1983) ...................................................................................6

*Mills v. Electric Auto-Lite Co.*,
    396 U.S. 375 (1970)............................................................................................2, 14, 15

*Milstein v. Werner*,
    58 F.R.D. 544 (S.D.N.Y. 1973) .......................................................................17

*Mumma v. Mumma*,
    780 So.2d 1001 (Fla. 4th DCA 2001) ..............................................................4

*In re Report and Recommendations of Comm. On Appointment and Assignment of*
    *Senior Judges*,
    847 So.2d 415 (Fla. 2003)...............................................................................13

*In re Sunbeam Sec. Litig.*,
    176 F. Supp. 2d 1323 (S.D. Fla. 2001) ...........................................................17

**STATUTES**

Fla. Stat. § 607.07401 ............................................................................................1, 3, 4

## I.      INTRODUCTION

Plaintiffs W.A. Sokolowski, Robert Lowinger, and Helene Hutt, by their Lead Counsel, respectfully submit this memorandum of law in support of their motion, pursuant to Fla. Stat. § 607.07401, for an award of attorneys' fees in the amount of $2,200,000 to be awarded to Lead Counsel on behalf of all Plaintiffs' counsel for attorneys' fees and necessarily-incurred litigation expenses.[1]

The Settlement[2] has been achieved after nearly three years of pre-suit activity commencing prior to Plaintiff Sokolowski's February 2014 demands upon the Board of Directors of Nominal Defendant Ocwen Financial Corporation ("Ocwen" or the "Company")) followed by the commencement of this Action in December, 2014.

The Settlement was achieved after arms-length negotiations by the Parties and by Court assisted mediation to reach the final terms of the agreement. The Settlement acknowledges certain highly positive developments at Ocwen in the wake of Mr. Sokolowski's demand letters (and those of other Ocwen shareholders) and confers substantial benefits upon the Company in the form of significant corporate governance improvements achieved with substantial assistance of Plaintiffs' counsel as set forth more fully in the Joint Declaration of Richard A. Speirs and Richard D. Greenfield in Support of Final Settlement and Lead Counsel's Application for Attorneys' Fees (the "Joint Declaration"), filed herewith.

---

[1] Lead Counsel will allocate the fees awarded by the Court among all Plaintiffs' counsel based upon a determination by Lead Counsel of the respective contributions of Lead Counsel to this Action.

[2] Unless otherwise noted, capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement, dated December 12, 2016 [D.E. 201-1] (the "Settlement" or the "Stipulation").

As a result of these benefits, which have been acknowledged by Ocwen, the Company has agreed to pay Lead Counsel, on behalf of all Plaintiffs' counsel, a total of $2,200,000 for attorneys' fees and litigation expenses.  Moreover, and as stated in the Stipulation at ¶ X.1, Defendants do not oppose the request for attorneys' fees and reimbursement of litigation expenses as set forth herein. Finally, the agreed-upon award is fair and reasonable given the time, effort, and resources expended by Plaintiffs' counsel, and is not contingent on approval of the Settlement. *See* Stipulation at ¶¶ X.1 – X.3.

It is well-recognized that counsel who obtain substantial benefits for a corporation as a result of their prosecution and successful resolution of derivative litigation are entitled to attorneys' fees and reimbursement of expenses. *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-94 (1970). As set forth in the Stipulation, Ocwen has voluntarily adopted corporate governance reforms and agrees that this adoption has resulted, in part, from Plaintiff Sokolowski's demand letters and the claims alleged by Plaintiffs in the Action, as well as Plaintiffs' and Lead Counsel's assistance in establishing those corporate governance improvements. *See* Stip. at ¶¶ VI.1 – IV.4. "Where, as here, a corporation voluntarily takes the action demanded in a derivative suit, the trial court has discretion to award an attorney's fee to derivative counsel." *Ginsberg v. Keehn*, 550 So. 2d 1145, 1147 (Fla. 3rd DCA 1989). Indeed, "so long as the trial judge is satisfied that there is a causal connection between the derivative suit and the corporate action, and that there has been a resultant benefit to the corporation," then "[s]uch a suit is ***by definition*** 'successful, in whole or in part'" and satisfies the standards in Florida statutory provisions for award of attorneys' fees. *Id.* (citing Florida

2

statute)[3] (emphasis added); *see also Lane v. Head*, 566 So.2d 508 (Fla. 1990) ("Recovery," for purposes of determining appropriate attorney fee award in successful derivative action, was amount of total judgment which plaintiff shareholder was entitled to receive).

Consistent with the above principles, courts in Florida "may award reasonable attorney's fees to a successful plaintiff in a shareholders' derivative action." *Mumma v. Mumma*, 780 So.2d 1001 (Fla. 4th DCA 2001), *review denied Mumma v. Mumma*, 797 So.2d 587 (2001). In particular, Fla. Stat. § 607.07401(6) permits this Court to "award reasonable expenses for maintaining the proceeding, including reasonable attorney's fees, to a successful plaintiff or to the person commencing the proceeding who receives any relief, whether by judgment, compromise, or settlement …." In fact, negotiated, agreed-upon attorneys' fees are the ideal toward which litigants should strive. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation."). Additionally, when the agreed-upon fee is a result of protracted arm's-length negotiations the court should give "substantial weight to a negotiated fee amount." *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001). Moreover, the fee negotiations occurred only after the Court assisted the Parties in reaching a final resolution of all material terms of the settlement. "This weight is particularly appropriate when, as here, no objection has been raised to the fee award and the amount of fees is entirely consistent with a reasonable fee award under the circumstances of the case." *Id.* To date, no objections have been received by Lead Counsel.[4]

---

[3] Fla. Stat. § 607.07401 was further amended in 1997, changing its numerical identifier among Florida statutes. *See* Fla Stat. § 607.07401 (notes). This case and others predating the amendment cite its prior incarnation which set forth the same principles.

[4] The deadline to object to the Settlement or any request for attorneys' fees and reimbursement of litigation expenses is January 4, 2016. *See* D.E. 201-2 at Section IX. Should any objection be

A.    **The Award of Attorneys' Fees is Supported by the Application of the *Johnson* Factors**

In determining whether a requested award of attorneys' fees is fair and reasonable, district courts should be guided by the factors articulated in *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974) *abrogated on other grounds Blanchard v. Bergeron*, 489 U.S. 87 (1989).[5] The *Johnson* factors are not rigid and formulaic, but should be applied in light of the circumstances of a particular case to ensure just compensation for counsel.[6] *See In re Catfish Antitrust Litig.*, 939 F. Supp. 493, 502 (N.D. Miss. 1996) ("[N]ot every [*Johnson*] factor need be necessarily considered."). As demonstrated below, application of the pertinent factors supports the fairness and reasonableness of the requested fee. This request also satisfies the basic element for award of attorneys' fees under Florida statute, namely, that Plaintiffs here "did not bring the action to vindicate an injury sustained by [them] personally, but, rather, brought the action to 'enforce a right of action existing in the corporation.'" *Apgar & Markham Const. of Florida, Inc. v. Apgar*, 684 S.2d 284, 285 (Fla. 3rd DCA 1996) (citing *Fort Pierce Corp. v. Ivey*, 671 So.2d 206, 207 (Fla. 4th DCA 1996)). *See also Lane v. Head*, 566

---

received by Lead Counsel, Lead Counsel will file a response to such objection for the Court's consideration prior to the Final Settlement Hearing.

[5] The *Johnson* factors are substantially similar to those employed by Delaware Courts in derivative litigation. *See In re Infinity Broad. Corp. S'holders Litig.*, 802 A.2d 285, 293 (Del. 2002) (listing factors). Moreover, courts "rely with confidence upon Delaware law to construe Florida corporate law." *Int'l Ins. Co. v. Johns*, 874 F.2d 1447, 1459 n. 22 (11th Cir.1989).

[6] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

So.2d 508 (Fla. 1990) (attorneys' fees may be awarded where loss was not personal to plaintiff but inhered in the corporation itself).

### 1.    The Time and Labor Required

Shareholder derivative actions are "notoriously difficult and unpredictable." *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983). This Action is no exception. The legal and factual issues presented were difficult and complex. The alleged misconduct in the Consolidated Verified Shareholder Derivative Complaint [D.E. 143] (the "Complaint" or "Compl.") resulted from multiple years of inadequate internal controls, and breaches of fiduciary duties arising from complicated mortgage loan servicing compliance issues as well as substantial conflicts of interest among Ocwen's officers and directors. Many of the allegations were technical and nuanced and required substantial and detailed knowledge of corporate law and principles of accounting. In addition to the complex transactions and rules regarding related party transactions, Plaintiffs asserted novel and difficult claims against third-parties for aiding and abetting, and difficult claims for insider trading against the Ross Fund Defendants. *See* Compl. at ¶¶ 1, 3, 79, 188, 237, 405 – 409, 423 – 430.

Additionally, Plaintiffs' counsel undertook significant efforts and expended substantial resources throughout the course of the litigation and settlement including, *inter alia*, undertaking a thorough investigation of the facts alleged, filing a complaint in this Court [D.E. 1], an amended complaint [D.E. 25] and a second amended complaint [D.E. 143]. Plaintiff Sokolowski's and Lead Counsel's expansive pre-suit investigation into Defendants' conduct resulted in allegations challenging multiple transactions and Ocwen's servicing practices over a multi-year period and asserting six separate claims for relief. *See* Joint Declaration at ¶¶ 16-23. Moreover, Lead Counsel drafted substantial briefing related to opposing a motion to stay as well

as certain Defendants' motions to dismiss based on jurisdiction, among other defenses. *Id.* at ¶ 20.

Shortly before Defendants' responses were due to be filed in the Sokolowski Action, the Ocwen's counsel informed Lead Counsel that the Special Litigation Committee (the "Committee") that had been appointed by Ocwen's Board following Mr. Sokolowski's demands, had "paused" its investigation and replaced two members of the Committee with new Board members. No date was established for when the investigation would re-commence or conclude, only that the Committee would monitor certain proceedings. *Id.* at ¶ 17. Accordingly, Defendants filed numerous motions, including Ocwen's motion to stay the action indefinitely [D.E. 37 (filed April 13, 2015)], based on the Committee's decision to pause the investigation, which was joined by the other Defendants [D.E. 58]. Several pleadings were filed with the Court regarding this issue and briefing was extended to July 16, 2015 [D.E. 73].

Motions were also made by certain Defendants to dismiss the Sokolowski action on various grounds including lack of personal jurisdiction. [D.E. 74, 77]. Lead Counsel opposed Defendants' motions and moved for expedited discovery of the Committee's investigation based on its unprecedented decision to stay the litigation "indefinitely". As set forth in the Joint Declaration, Lead Counsel submitted additional briefing in opposition to motions to dismiss that rebutted Defendants' arguments.

On September 29, 2015 [D.E. 89], the Court denied Ocwen's motion to stay, without prejudice for renewal under certain conditions. As part of this ruling, the Court denied the motion for expedited discovery as moot. Pursuant to various stipulations and orders, certain Defendants filed motions to dismiss in November and December 2015, and Ocwen filed another motion to stay the Sokolowski Action based on the Committee's decision in October 2015, to

recommence its investigation. Lead Counsel researched and briefed opposition to the numerous motions to dismiss and conducted extensive investigations into personal jurisdiction issues regarding certain Defendants. On the eve of filing responses to the numerous motions, the Court adjourned the time to respond in light of the proposed consolidation of the recently *Hutt* and *Lowinger* cases. [D.E. 119].

The actions cases commenced by Ms. Hutt and Dr. Lowinger were consolidated with Mr. Sokolowski's litigation on January 8, 2016. [D.E. 120]. On March 8, 2016, the plaintiffs filed their Complaint.

The Complaint amplified and expanded upon the allegations and claims concerning Ocwen's alleged related party transactions, regulatory compliance failures, and stock repurchase agreement with WLRoss, and added claims relating to the SEC's Cease and Desist Order regarding Ocwen's transactions with HLSS. The Complaint also challenged the Committee's independence, the circumstances of its appointment, the members of the Committee and the conduct of the investigation it was undertaking. In response, certain of the Defendants separately filed seven motions to dismiss. [D.E. 157, 158, 160, 163 – 166] on May 13, 2016. Then, on May 20, 2016, Defendants Ronald J. Korn, William H. Lacy, Wilbur L. Ross, Jr., Robert A Salcetti, Barry N. Wish filed their joint motion to dismiss. [D.E. 171].

While Defendants' motions to dismiss were pending, Lead Counsel negotiated the production of certain document discovery which resulted in the production of over 650,000 pages of documents which had been provided to the Committee. Joint Decl. at ¶ 37. Lead Counsel conducted a review of those documents as part of the review of the claims in the Action both prior to and after the Settlement. *See* Joint Decl. at ¶¶ 37-39. More significantly, Lead

Counsel obtained from the Committee the notes of the interviews of Defendants and others conducted by counsel for the Committee as part of the Committee's investigation.

Although Lead Counsel had largely completed drafting Plaintiffs' responses to the foregoing motions to dismiss, they then engaged in protracted settlement negotiations with principal defense counsel, Mr. Coffey. As the negotiations with counsel for Defendants reached a point that the parties felt that mediation would be helpful to closing the gaps in their respective portions, the Court, through the Hon. Laurana Snow, agreed to assist in mediating the open issues. When the parties felt they were ready, they had an in-person settlement mediation before Judge Snow on October 13, 2016. *Id.* at ¶ 35. Once the parties had concluded and finalizing their remaining open settlement issues, the parties and the Court turned their attention to seeing whether an agreement also could be reached with respect to the amount of fees and reimbursement of expenses incurred. Ultimately, it was agreed that Ocwen would agree to pay, upon the consummation of the settlement, $2.2 million in fees and reimbursement of expenses. This and the settlement's principal terms were thereafter memorialized in a "term sheet."

In addition, Lead Counsel conducted further discovery, including interviews of two members of Ocwen's Board of Directors to assess, *inter alia*, the strength of Plaintiffs' substantive claims, the Committee's formation and its investigation and the adequacy of the Settlement in light of the strengths and weakness of the claims in the Action as well as the risks of continued litigation. *Id.* at ¶¶ 38.

Upon information and belief, as stated in the Joint Declaration, Plaintiff's counsel, in the aggregate, have expended 4,223 hours through December 27, 2016 in pre-suit investigations and

other related activities,[7] the prosecution and settlement of this action as generally described above. Such time expenditure reflected a combined "lodestar" (*i.e.* hours times hourly rates) of $2,896,507.75. In addition, Lead Counsel counsel incurred unreimbursed expenses in the amount of $36,493.61 through December 27, 2016.[8] Additional time is being expended by Lead Counsel in connection with the settlement process including participating in the settlement approval hearing scheduled for January 18, 2017. Lead Counsel's lodestar and litigation expenses are as follows:

| Firm | Total Lodestar |
|---|---|
| Cohen Milstein Sellers & Toll PLLC | $1,618,143.75 |
| Greenfield & Goodman, LLC | $1,278,364.00 |
| **Total** | **$2,896,507.75[9]** |

| Firm | Total Expenses |
|---|---|
| Cohen Milstein Sellers & Toll PLLC | **$33,469.61** |
| Greenfield & Goodman, LLC | **$3,024.00** |
| **Total** | **$36,493.61[10]** |

This total value of the time and expenses substantially exceeds the $2,200,000 agreed to be paid by Ocwen as part of the Settlement. *Id.* at ¶¶ 43-46. The agreed-upon award of fees and reimbursement of expenses is modest in light of the fact that it is substantially *less* than the total fees and expenses incurred in prosecution of this action the amount sought by Lead Counsel.

---

[7] This number of hours are those of Lead Counsel as set forth in Exs. A-B to the Joint Declaration. Additional Plaintiff's counsel as set forth in Exs. C-E have contributed additional hours, bringing the total hours to $3,803,397.00.

[8] The stated litigation expenses are those of Lead Counsel as set forth in Exs. A-B to the Joint Declaration. Additional Plaintiff's counsel as set forth in Exs. C-E have incurred additional expenses, bringing the total hours to $54,132.48.

[9] The total lodestar, as demonstrated in the affidavits submitted by all Plaintiffs' counsel is $3,803,297. *See* Joint Decl. at Ex. A-E.

[10] The total litigation expenses, as demonstrated in the affidavits submitted by all Plaintiffs' counsel is $54,132.48. *See* Joint Decl. at Ex. A-E

### 2.   The Novelty and Difficulty of the Questions Involved

The *Johnson* factor assessing the difficulty of legal questions involved in this Action is satisfied here. Plaintiff Sokolowski asserted in his demand letter that the nominees for directors who had served through 2012 had subjected the Company to class actions and other litigation as a result of wrongdoing and lack of internal controls as well as such directors' failure to exercise appropriate oversight duties and to take action to remedy improper practices related to loan servicing and foreclosure. Joint Decl. at ¶¶ 8-9. As made clear by the Delaware Court of Chancery in *In re Caremark Intern. Inc. Derivative Litig.*, 698 A.2d 959 (Del. Ch. 1996), a "failure of oversight" theory of recovery is "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *Id.* at 967. Here, Lead Counsel strongly believe that there exists ample evidence that they could prove their claims at trial, given Lead Counsel's review of the over 650,000 documents produced to them, the review of interview notes written by the Committee's counsel as well as the consent order entered into with the New York Department of Financial Services in December 2014, which addressed many issues at the heart of Plaintiffs' claims as alleged in the Complaint.[11] Nonetheless, Plaintiffs recognized the difficulty inherent in proving claims regarding the Individual Defendants' failure of proper corporate governance. The corporate governance improvements achieved and described in the Joint Declaration are a significant achievement and benefit shareholders. Accordingly, this *Johnson* factor is satisfied.

---

[11] *See, e.g.*, Consent Order Pursuant to New York Banking Law § 44, signed by the NYS DFS and Ocwen, *available at* http://www.dfs.ny.gov/about/ea/ea141222.pdf

### 3.  The Skill Required to Perform the Legal Service Properly

The Settlement resolves what is an inherently complex litigation and thus necessarily required applicable skill. First, the Supreme Court of Florida has held that derivative shareholder lawsuits are *per se* complex. *See In re Report and Recommendations of Comm. On Appointment and Assignment of Senior Judges*, 847 So.2d 415, 421 n.5 (Fla. 2003) ("While none of the Florida rules of court procedure define 'complex cases,' we agree with the Committee that the following, though not an exhaustive list, are examples of complex litigation: antitrust claims, construction defect claims involving multiple parties, shareholder derivative claims …."); *see also In re Chemed Corp. Shareholder Derivative Litig.*, 11 F. Supp. 3d 1335, 1335 (US MDL) (2014) (noting that a plaintiffs' shareholder action alleging improper medical billing over many years "unquestionably involve[s] complex facts"). Accordingly, this Action, by definition involves difficult questions and satisfies this *Johnson* factor. Second, this particular Action involved numerous inter-related companies and Defendants whose actions and relationship to nominal Defendant Ocwen were central to many of Plaintiffs' claims. The legal issues in this Action were difficult because, further litigation and continued discovery to prove Plaintiffs' claims at trial would have required substantial efforts to document through further discovery and to synthesize the claims to present at trial. Indeed, assessing the strengths and weaknesses of Plaintiffs' claims to assess the adequacy of the Settlement already required a substantial amount of skilled work, which each of Lead Counsel was well-equipped to do, as demonstrated by their experience. *See* Joint Decl. at ¶¶ 38-39 & Exs. A-E (Declarations attaching the respective resumes of Plaintiffs' counsel).

### 4.  The Amount Involved and the Results Obtained

The significant corporate governance benefit conferred upon Ocwen and its shareholders is perhaps the most important factor for the Court to consider in its approval of the fee award. As

the Supreme Court explained in *Mills*: "[A]n increasing number of lower courts have acknowledged that a corporation may receive a 'substantial benefit' from a derivative suit, justifying an award of counsel fees, regardless of whether the benefit is pecuniary in nature." 396 U.S. at 395.

As discussed herein, the corporate governance improvements and other benefits of Plaintiff's' activities (including their pre-suit investigations and demands upon Ocwen's Board of Directors) are significant. Ocwen has acknowledged that the pre-suit demands on the Company's Board by Plaintiff Sokolowski and other Plaintiffs and the ultimate litigation of this Action assisted in reaching this resolution. Indeed, the Committee investigation "was assisted by input from Lead Counsel who met with the Committee" and the corporate governance measures adopted by the Company in relation to its Board "are attributable in part to the input of Plaintiffs and Lead Counsel." Stip. at ¶ VI.2. The corporate governance improvements also included enhancements to Ocwen's Board membership and training. *Id.* Moreover, as stated in Ocwen's Form 10-K for the fiscal ended December 2015, Ocwen has implemented significant corporate governance improvements as part of its consent order with New York Department of Finance ("NY DFS"), which entailed monitoring and assessment of corporate practices and which monitoring took place during and after Plaintiff Sokolowski's pre-suit demands and in connection with the Board's corporate governance improvements, including the appointment and investigation of the Committee. As stated in the relevant Report on Form 10-K filed with the SEC, Ocwen made the following improvement:

> Non-monetary provisions included: the appointment of an independent Operations Monitor who shall, among other responsibilities, review and assess the adequacy and effectiveness of our operations, including providing periodic reporting on findings and progress, and review transactions with Altisource, Home Loan Servicing Solutions, Ltd. (HLSS), Altisource Residential Corporation (Residential) and Altisource

> Asset Management Corporation (AAMC); the appointment of two additional independent directors to the Board of Directors (which occurred in January 2015); the resignation of William C. Erbey as an officer and director, as of January 16, 2015, as well as from the boards of Altisource, HLSS, AAMC and Residential; and restrictions on the ability and/or timing of any future MSR acquisitions which effectively prohibit any such future acquisitions until we have satisfied certain specified conditions.

Ocwen Financial Corp., Annual Report (Form 10-K) (Feb. 29, 2016). Thus, because the efforts of Lead Counsel and other counsel for Plaintiffs obtained significant corporate governance benefit for the Company, the request for approval of attorneys' fees and expenses should be approved.

### 5.     The Skill, Experience, and Reputation of Counsel

The experience, reputation, and ability of counsel is another factor the Court should consider when determining whether a fee award is fair and reasonable. *Johnson*, 488 F.2d at 717-719.

As detailed in their firm resumes (*see* Joint Dec. at Exs. A-B (including biographical information with respect to Cohen Milstein and Greenfield & Goodman), Lead Counsel have extensive expertise and experience in the field of securities litigation and have successfully prosecuted numerous shareholder derivative lawsuits and obtained excellent recoveries on behalf of shareholders. Thus, the Court may be confident that Ocwen's shareholders received the highest caliber of legal representation in litigating this Action and obtained the best result possible in current circumstances. The résumés of each of Plaintiffs' Counsel are attached as exhibits to their respective fee Declarations, which are attached to the Joint Declaration at Exhibits A-E. Each résumé reflects that Plaintiffs' Counsel are experienced in shareholder litigation and have contributed skilled representation to Plaintiffs in this Action.

6.        **The Contingent Nature of the Fee**

Courts have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. *See, e.g., In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1335 (S.D. Fla. 2001); *Milstein v. Werner*, 58 F.R.D. 544, 549 (S.D.N.Y. 1973) ("Derivative suits . . . require the initiative of shareholders to commence the suit, and the probable level of compensation for attorneys as a practical matter directly affects the ability of shareholders to exercise such initiative. Thus, fee allowances in this area should be viewed as an incentive, as much as a just reward for services performed.")

Here, Plaintiffs' counsel undertook litigation of this Action, which presented difficult factual and legal issues, with no guarantee of a successful resolution or compensation for their efforts. Indeed, Plaintiff Sokolowski and, subsequently, other Ocwen shareholders, undertook the risky and difficult burden of investigating Ocwen's factual and economic circumstances and, thereafter, sending to Ocwen's Board of Directors, letters setting forth their claims of wrongdoing. They thereafter commenced litigation in light of the pending investigation of their demands by the Committee. Despite the inherent risks of shareholder derivative litigation and such cases' high "mortality" rate, as well as the hurdles of the Committee's Report and application of the business judgment rule, Lead Counsel and others expended significant time and resources working on behalf of Plaintiffs, Ocwen, and its shareholders. They did so by thoroughly investigating Ocwen's circumstances and multiple potential claims, drafting three complaints, litigating numerous motions, negotiating document productions and conducting discovery in connection with the settlement, and effectively negotiating favorable settlement terms. Given the risks involved in the litigation, the fully contingent nature of this action further supports not only approval of the settlement but the agreed upon fees and expenses. Lead Counsel, with the assistance of other Plaintiffs' counsel have conducted these efforts in pursuit

14

of the claims in the Action on a wholly contingent-fee basis and at all times faced the risk of no compensation at all. Indeed, the Florida Supreme Court has recognized that, under such circumstances, this Court's award of a multiplier that results in a fee award in excess of counsel's lodestar is entirely appropriate:

> One of the purposes of [*Florida Patient's Compensation Fund v. Rowe,* 472 So.2d 1145 (Fla. 1985)] was to encourage attorneys to take cases under contingency-fee arrangements, thereby making legal services more widely available to those who otherwise could not afford them. As is obvious, some contingency-fee cases will result in a financial loss to the lawyers who handle them. Accordingly, *Rowe* recognized that attorneys taking contingency-fee cases are entitled to a higher than usual reimbursement in successful contingency-fee cases, which would offset their other losses.

*Lane*, 566 So.2d at 510. Florida courts' encouragement of rewarding the risks undertaken by counsel who bring cases on contingency fee basis underscores the reasonableness of the request by Lead Counsel for the award of the agreed-upon award of fees and reimbursement of expenses. Here, Lead Counsel are requesting *less* than their and other counsel's actual lodestar and related litigation costs when precedent favors a higher multiple of the fee being requested. Accordingly, this Court should grant Plaintiffs' request for an award of $2,200,000 in attorneys' fees including reimbursement of litigation expenses, which is substantially less than the fees and expenses incurred in pursuit of the Action. *See* Joint Decl. at Exs. A-E.

## II.      CONCLUSION

For the reasons set forth above, Lead Counsel, on behalf of all Plaintiffs, respectfully submit that the Settlement, including the agreed-upon attorneys' fees and reimbursement of expenses, is fair, reasonable, and adequate and should be approved by the Court.

DATED: December 27, 2016

Respectfully submitted,

COHEN MILSTEIN SELLERS & TOLL PLLC

/s/ Theodore J. Leopold

Theodore J. Leopold
(Florida Bar No. 989762)
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Telephone: 561-515-1400
Facsimile: 561-515-1401
Email: tleopold@cohenmilstein.com

Steven J. Toll
(admitted *pro hac vice*)
1100 New York Ave NW, Suite 500
Washington, DC 20008
Telephone: 202-408-4600
Email: stoll@cohenmilstein.com

Richard A. Speirs
(admitted *pro hac vice*)
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: 212-838-7797
Email: rspeirs@cohenmilstein.com

*-and-*

GREENFIELD & GOODMAN, LLC
Richard D. Greenfield (admitted *pro hac vice*)
Marguerite R. Goodman
Ann M. Caldwell
Ilene F. Brookler
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: 917-495-4446
Email: whitehatrdg@earthlink.net

*Lead Counsel for Plaintiff*